Timothy L. **MILLS**, Appellant
(Plaintiff),

v.

Guy **REYNOLDS** and Sid **Marks**,
Appellees (Defendants).

Levi Harry **BUNKER**,
Appellant (Plaintiff),

v.

Jim **NIGGEMYER**, Appellee
(Defendant).

Nos. 89–193, 89–195.

Supreme Court of Wyoming.

March 11, 1991.

Rehearing Granted May 6, 1991.

Gary L. Shockey and Phillip White, Spence, Moriarity & Schuster, Jackson, for appellants.

William S. Bon, Schwartz, Bon, McCrary & Walker, Casper, for appellees Reynolds and Marks.

Patrick J. Murphy, Williams, Porter, Day & Neville, P.C., Casper, and John T. Pappas, Western Law Associates, P.C., Lander, for appellee Niggemyer.

Rodger McDaniel, McDaniel & Tiedeken Law Offices, Cheyenne, for amicus curiae, Wyoming AFL–CIO.

Robert W. Tiedeken, McDaniel & Tiedeken Law Offices, and George Santini, Graves, Santini & Villemez, P.C., Cheyenne, for amicus curiae, Wyoming Trial Lawyers Ass'n.

Joseph B. Meyer, Atty. Gen., Ron Arnold, Sr. Asst. Atty. Gen., Larry M. Donovan, Asst. Atty. Gen., for amicus curiae, State of Wyo.

Patrick R. Day, Holland & Hart, Cheyenne, for amici curiae Rocky Mountain Oil and Gas Ass'n, Wyoming Mining Ass'n, Wyoming Trucking Ass'n, Inc., and Associated Gen. Contractors of Wyoming, Inc.

Before URBIGKIT, C.J., and
THOMAS, CARDINE,* MACY, and
GOLDEN, JJ.

THOMAS, Justice.

The primary question that must be resolved in this case is whether Wyo. Const. art. 10, § 4 forecloses the legislature from extending the immunity of employers to co-employees acting within the scope of their employment. Stated another way, is the legislature foreclosed by the constitution from eliminating a cause of action that had been earlier recognized in the law? In addition to challenging the authority to eliminate a cause of action, the primary issue also presents a question of interpretation of Wyo. Const. art. 10, § 4. Additional issues are presented by the alternative argument of the respective appellants that the accused statute, § 27–14–104(a), W.S. 1977 (Cum.Supp.1989)[1], is contrary to Wyo.

* Chief Justice at time of oral argument.

1. Section 27–14–104(a), W.S.1977 (Cum.Supp. 1989), provides:

"(a) The rights and remedies provided in this act for an employee including any joint employee, and his dependents for injuries in-

Const. art. 1, §§ 2, 3, 6, 7, 8, 9, and 34, as well as Wyo. Const. art. 3, § 27. These additional claims of unconstitutionality strike more directly at the authority of the legislature to eliminate a cause of action. The district court, in granting summary judgments in favor of the respective defendants, ruled that § 27–14–104(a), W.S.1977 (Cum.Supp.1989), is constitutional, contrary to all of the contentions of the appellants. We agree that the statute is constitutional and affirm the judgment of the district court.

Timothy L. Mills (Mills) and Levi Harry Bunker (Bunker) filed separate briefs that state the issues identically:

"1. Does Wyo.Stats.1977, as amended, Section 27–14–104, which grants immunity from suit to coemployees, violate Article 10, Section 4, of the Wyoming Constitution, which provides that 'No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person?'

"2. Does Wyo.Stats.1977, as amended, Section 27–14–104, which grants immunity from suit to coemployees, violate Article 10, Section 4, of the Wyoming Constitution, which limits the immunities which can be granted pursuant to Worker's Compensation laws to the 'employer contributing as required by law' to the compensation fund?

"3. Does Wyo.Stats.1977, as amended, Section 27–14–104, which grants immunity from suit to coemployees, violate Article 1, Sections 2, 3, 6, 7, 8, 9, and 34, and Article 3, Section 27, which provide for equality among all members of the human race in the right to life, liberty, and the pursuit of happiness; equal political rights, equality in civil rights, and equal privileges among all citizens; due process of law; prohibit absolute and arbitrary uses of power, even by the greatest majority; provide for equal access to the courts for all citizens; provide that the right to a jury trial is inviolate; provide that all laws shall have a uniform opera-

tion; and which prohibit special legislation, especially special legislation which calls for the 'limitation of civil actions,' and which grants 'to any corporation, association or *individual* ... *any special exclusive* privilege, *immunity,* or franchise whatever?' "

Guy Reynolds (Reynolds) and Sid Marks (Marks) state the only issue that they perceive in this way:

"The sole issue for review is whether in granting summary judgment in favor of the defendants, the District Court correctly held that the part of § 27–14–104(a), W.S.1977, prohibiting lawsuits between co-employees while acting in the course and scope of their employment was not unconstitutional."

Jim Niggemyer (Niggemyer), responding to the arguments of Bunker, presents this statement of the issue:

"Is the Wyoming Legislature's elimination of co-employee liability constitutional?"

In addition to the briefs of the parties, the court was favored with briefs of *amicus curiae* from several interested groups, all filed with the permission of the court. In the *Amicus Curiae* Brief of the Wyoming AFL–CIO, the issues in the appeal are articulated in this way:

"A. Does W.S. 27–14–104(a) violate the provisions of Article 1, Section 2 of the Wyoming Constitution which guarantees:

"In their inherent right to life, liberty and the pursuit of happiness, all members of the human race are equal.

"B. Does W.S. 27–14–104(a) violate the provisions of Article 1, Section 3 of the Wyoming Constitution which provides:

"Since equality in the enjoyment of natural and civil rights is only made sure through political equality, the laws of this state affecting the political rights and privileges of its citizens shall be without distinction of race, color, sex, or any circumstance or condition whatsoever other than individual

curred in extrahazardous employments are in lieu of all other rights and remedies against any employer and any joint employer making contributions required by this act, or their

employees acting within the scope of their employment, but do not supersede any rights and remedies available to an employee and his dependents against any other person."

incompetency, or unworthiness duly ascertained by a court of competent jurisdiction.

"C. Does W.S. 27–14–104(a) violate the provisions of Article 1, Section 6 of the Wyoming Constitution which reads as follows:

"No person shall be deprived of life, liberty or property without due process of law.

"D. Does W.S. 27–14–104(a) violate the provisions of Article 1, Section 7 of the Wyoming Constitution which guarantees:

"Absolute, arbitrary power over the lives, liberty and property of free men exists nowhere in the republic, not even in the largest majority.

"E. Does W.S. 27–14–104(a) violate the provisions of Article 1, Section 8 of the Wyoming Constitution which assures access to the courts of this state as follows:

"All courts shall be open and every person for an injury done to person, reputation or property shall have justice administered without sale, denial or delay.

"F. Does W.S. 27–14–104(a) violate the provisions of Article 1, Section 9 of the Wyoming Constitution which reads in pertinent part as follows:

"The right of trial by jury shall remain inviolate in criminal cases, but a jury in civil cases in all courts or in criminal cases in courts not of record, may consist of less than twelve men, as may be prescribed by law.

"G. Does W.S. 27–14–104(a) violate the provisions of Article 1, Section 34 of the Wyoming Constitution which guarantees:

"All laws of a general nature shall have a uniform operation.

"H. Does W.S. 27–14–104(a) violate the provisions of Article 10, Section 4 of the Wyoming Constitution which reads in pertinent part as follows:

"No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person.

\* \* \* \* \* \*

"The right of each employee to compensation from such fund (referring to this Constitutional section as providing for the maintenance of a fund for the payment of compensation to injured employees) shall be in lieu of and shall take the place of any and all rights of action against *any employer contributing as required by law to such fund* in favor of any person or persons by reason of any such injuries or death. (Emphasis added.)"

The Wyoming Trial Lawyers Association says that the issue is:

"Does absolute co-employee immunity under Section 27–14–104(a), W.S.1977 (1987 Cum.Supp.), violate Article 10, Section 4, of the Wyoming Constitution?"

In the *Amicus Curiae* Brief of the State of Wyoming, there is no statement of an issue, but the statement of the argument suffices in lieu of an issue statement. It is:

"Section 27–14–104(a), W.S.1986, does not afford complete, absolute co-employee immunity but rather limits the available remedies to injured co-workers."

Lastly, in the *Amicus Curiae* Brief of the Rocky Mountain Oil and Gas Association, the Wyoming Mining Association, the Wyoming Trucking Association, Inc., and the Associated General Contractors of Wyoming, Inc., the statement of the issue is:

"May the Legislature constitutionally grant coemployees immunity from suit, when acting within the scope of their employment, under Wyoming's Worker's Compensation Act?"

These cases present a pure question of the constitutionality of the statute. Consequently, the operative facts may be very briefly stated. Mills was employed by Dunbar Well Service, Inc. and, early in March of 1988, Reynolds directed Mills to paint the hood of a truck using equipment and materials provided by Marks. Both Reynolds and Marks were co-employees of Mills. While Mills was engaged in the assigned task, and was following instructions given him by Reynolds, an underrated pressure regulator burst near his face. Mills received severe injuries that included the loss of his left eye. He was awarded work-

er's compensation benefits with respect to his injuries.

In the companion case, Bunker was employed by Universal Equipment Co. and received instructions from Niggemyer, a supervisory co-employee, to remove some electrical equipment from the old concentrator area of the Atlantic City mine site. Niggemyer informed Bunker that the electricity had been shut off, but the electricity had not been shut off. When Bunker attempted to remove the equipment, as directed, he received severe electrical burns over 47% of his body and also suffered a broken hip when he fell from a ladder. Bunker also was awarded worker's compensation benefits.

Mills filed suit naming Reynolds and Marks as defendants. Bunker filed his action naming Niggemyer as a defendant. In both cases, the defendants responded to the respective complaints and then filed motions for summary judgment asserting the contention that § 27–14–104(a), W.S. 1977 (Cum.Supp.1989), made the rights and remedies under the Worker's Compensation Act the only rights or remedies available against a co-employee acting within the scope of his employment. The defendants claimed they were immune from suit. The motions for summary judgment were contested in both cases by the respective plaintiffs, who asserted that the provision of the statute making benefits under the act the exclusive right or remedy against a co-employee acting within the scope of his employment is contrary to the Constitution of the State of Wyoming and, for that reason, is void and of no effect. Although these cases had been filed separately, the district court, recognizing that the resolution in both cases would hinge on the constitutionality of § 27–14–104, ordered the hearings on the respective motions for summary judgment to be consolidated. After the hearing, the district court ruled that the provision was not unconstitutional, and it granted the motion for summary judgment of the respective defendants. When these appeals were filed, this court concluded to maintain the consolidation for consideration on appeal.

The importance of the constitutional claims justifies an historical review. In *Barnette v. Doyle*, 622 P.2d 1349 (Wyo. 1981), the court noted that worker's compensation laws developed during the end of the nineteenth century to provide social insurance for victims of industrial accidents. It was estimated that, at the time such laws were adopted, only 25% of injured workers were being compensated for injuries under common law remedies. *Boggs v. Blue Diamond Coal Company*, 590 F.2d 655 (6th Cir.1979), *cert. denied* 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47 (1979). The opinion of the court suggested that the laws were not developed to abrogate existing common law remedies that protected injured workers, but to counter the lack of recovery that was attributed to assumption of risk, contributory negligence, and the fellow servant rule. These doctrines, as well as other common law principles, had effectively shielded employers from liability. In order to provide compensation not based upon fault or the breach of a duty owed by the employer to the injured employee, the compromise was adopted that afforded immunity to the employer. *Barnette.*

Earlier, in *Zancanelli v. Central Coal and Coke Company*, 25 Wyo. 511, 173 P. 981 (1918), this court observed that many employees were required to waive their right to sue their employer as a condition of their employment. Even if the worker did not agree to such a condition, the economic realities of those times generally mandated that he simply could not afford to litigate so, ultimately, the final result became the same. It seemed clear that the traditional tort mechanisms and common law remedies were not adequate to address the needs of an increasingly larger working class in America.

While, in many states, compensation legislation offered an appropriate solution, in Wyoming, the conclusion was that a constitutional amendment was necessary before such legislation could be adopted. At the time, Wyo. Const. art. 10, § 4, provided:

"No law shall be enacted limiting the amount of damages to be recovered for

causing the injury or death of any person. Any contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void." Because the substitution of worker's compensation benefits was perceived as limiting the amount of damages to be recovered by an injured employee, it appeared to be necessary to amend the constitution. The process for accomplishing the amendment was completed in 1914. *1913 Wyo.Sess. Laws*, Ch. 79; *Meyer v. Kendig*, 641 P.2d 1235 (1982). By the amendment, Wyo. Const. art. 10, § 4, was expanded to provide that:

"No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person. Any contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void. As to all extrahazardous employments the legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classifications to each person injured in such employment or to the dependent families of such as die as the result of such injuries, except in case of injuries due solely to the culpable negligence of the injured employee. The fund or funds shall be accumulated, paid into the state treasury and maintained in such manner as may be provided by law. The right of each employee to compensation from the fund shall be in lieu of and shall take the place of any and all rights of action against any employer contributing as required by law to the fund in favor of any person or persons by reason of the injuries or death."

Following this amendment, the legislature passed the original Wyoming Worker's Compensation Act, *1915 Wyo.Sess. Laws*, Ch. 124, § 8. The traditional tort recovery, with its essential elements and historical defenses, was replaced by a state-administered industrial insurance program that required no showing of fault. *Matter of Injury to Spera*, 713 P.2d 1155

(Wyo.1986); *Cottonwood Steel Corp. v. Hansen*, 655 P.2d 1226 (1982); *Kendig; Barnette*, 622 P.2d 1349; *Stephenson v. Mitchell ex rel. Workmen's Compensation Department*, 569 P.2d 95 (Wyo.1977); *Markle v. Williamson*, 518 P.2d 621 (Wyo. 1974). The injured worker needed to prove only that he had sustained injuries under work-related circumstances while employed in an extrahazardous employment by a covered employer. The key provisions of the legislative program were that the employer paid into an earmarked fund, established for the sole purpose of paying benefits for any work-related injury to a covered employee, and the employee no longer had the common law right to sue his employer. *Baker v. Wendy's of Montana, Inc.*, 687 P.2d 885 (Wyo.1984); *Kendig; Mauch v. Stanley Structures, Inc.*, 641 P.2d 1247 (Wyo.1982); *Zancanelli.*

The philosophy justifying the change in the law was that the worker gained by being assured a quick and certain recovery while the employer benefited because the risk of large damage judgments was eliminated. *Barnette*, 622 P.2d 1349; *Stephenson; Zancanelli.* In Wyoming, this combination of benefit and detriment has long been described as a *quid pro quo* adjustment that resulted in a relationship very similar to a contractual arrangement. *Spera; Baker; Cottonwood; Markle; Zancanelli.* While that justification well may have been important in inducing the voters to adopt the constitutional amendment, the justification was not needed for its application after it was adopted.

The worker's compensation approach was intended to substitute the statutory remedy for the common law remedy previously available to an injured worker against his employer, but it was not intended to provide exclusive relief under all circumstances and all situations. The injured worker, it was assumed, received a sufficient portion of his regular income to provide a minimum level of support for himself and his family without the necessity of public assistance. Because the benefits received by the employee were normally less than wages he earned by working and,

certainly, significantly less than potentially recoverable damages in a court action, the worker often resorted to other avenues of compensation. *See Boggs,* 590 F.2d 655; *Barnette.*

Even though neither the constitution nor the statute provided immunity for a co-employee, in 1939, this court held that the legislative intent supporting the Wyoming Worker's Compensation Act, because the overall purpose was to protect the worker, mandated that benefits under the act should be paid even though the circumstances of the injury or death created a legal liability in some person other than the employer. *In re Byrne,* 53 Wyo. 519, 86 P.2d 1095 (1939). The court ruled that Section 124–109, W.R.S.1931, purporting to avoid worker's compensation benefits in such an instance, "must be held to be without operative force under circumstances such as are now at bar." *Byrne,* 53 Wyo. at 539, 86 P.2d at 1102. In reaching this conclusion, the court analogized such a situation to one in which the injury or death was caused by a co-employee, pointing out that awards had been repeatedly made in the latter situations. This decision apparently was perceived as a ruling that an employee's cause of action against a negligent co-employee was eliminated as a matter of law. This perception apparently was confirmed in the case of *Blackwell v. Pickett,* 490 P.2d 347 (Wyo.1971), in which the court, being equally divided, affirmed a summary judgment granted to a co-employee on the ground that a claim against a fellow-employee by an employee who had received worker's compensation benefits was barred.

That was the law in Wyoming until 1974, when the court resurrected the common law right to sue a negligent co-employee. *Markle,* 518 P.2d 621. The rationale that led to the denial of *Byrne,* and the *sub silentio* overruling of *Blackwell* hinged on the absence of any language, either in the constitutional amendment or in the legislation subsequently adopted, that specifically indicated a co-employee was to be immune from suit. The legislature responded promptly to the *Markle* decision. In 1975, the original Wyoming Worker's Compensa-

tion Act was amended to extend immunity from suit to negligent co-employees unless they were found to be grossly negligent. *1975 Wyo.Sess.Laws* Ch. 149, § 1; *Cottonwood; Kendig.* Under the amended statute, ordinary negligence by a co-employee in the workplace was no longer actionable. In 1977, the statute again was amended to substitute the word "culpably" for the word "grossly." *1977 Wyo.Sess.Laws* Ch. 142, § 1, § 27–12–103(a), W.S.1977; *Cottonwood; Abeyta v. Hensley,* 595 P.2d 71 (Wyo.1979).

A case testing the constitutionality of the 1975 amendment to the Worker's Compensation Act soon came before the court. In *Kendig,* 641 P.2d 1235, an injured truck driver brought an action for damages against a co-employee asserting theories of both ordinary negligence and culpable negligence. The trial court, in denying the defendant's motion to strike the claim of ordinary negligence submitted in reliance upon Section 27–12–103(a), W.S.1977, declared the amendment to the statute unconstitutional. The district court invoked Wyo. Const. art. 1, § 34; art. 3, § 27; and Wyo. Const. art. 10, § 4. The case was permitted to go to trial on the claim of ordinary negligence, and a verdict in the amount of $330,000 was returned. When the case was appealed, this court ruled that the statute was constitutional, as written and amended, and that co-employees were immune from suit unless "culpably negligent." The judgment of the lower court was reversed.

In addressing the claims of unconstitutionality in *Kendig,* we held that Section 27–12–103(a), W.S.1977, did not conflict with art. 10, § 4, because the statute "does not limit the amount of damages to be recovered" and, instead, it specifically "limits the cause of action available for a recovery." *Kendig,* 641 P.2d at 1239. The court ruled that "a 'limitation in amount' and a 'right to recover' were regarded as separate issues and treated separately by the framers of the Wyoming Constitution." *Kendig,* 641 P.2d at 1239. The court also said that the argument advanced by Kendig would make legislative enactments im-

possible on such subjects as statutes of limitation and comparable negligence whenever they were asserted in cases involving injury or death. *Kendig.*

The court further held in *Kendig* that the trial court had erroneously relied upon art. 3, § 27, prohibiting special and local laws, and art. 1, § 34, requiring that laws of a general nature have a uniform application. The court recognized that art. 3, § 27, "means only that the statute must operate alike upon all persons in the same circumstances * * *." *Kendig,* 641 P.2d at 1240. The prohibition against special and local laws has never meant that legislation must affect all persons in exactly the same way when they confront a statute under differing circumstances. Classifications are constitutionally permissible, and the only restraint in this regard is that the classification is required to be reasonable. A classification concerning an ordinary interest is reasonable if it bears a rational relationship to a legitimate state objective, and the court ruled that the state objectives sought to be obtained included harmony among employees, the maintenance of a sound compensation fund, and the continuance of the purpose and philosophy behind the Worker's Compensation Act. *Kendig. See Ludwig v. Harston,* 65 Wyo. 134, 197 P.2d 252 (1948); *May v. City of Laramie,* 58 Wyo. 240, 131 P.2d 300 (1942). The same rationale was invoked to reject the claim of unconstitutionality under Wyo. Const. art. 1, § 34. Subsequent cases have maintained the justification set forth in *Kendig. Paravecchio v. Memorial Hospital of Laramie County,* 742 P.2d 1276 (Wyo.1987), *cert. denied* 485 U.S. 915, 108 S.Ct. 1088, 99 L.Ed.2d 249 (1988); *Baskin v. State ex rel. Worker's Compensation Division,* 722 P.2d 151 (Wyo.1986); *O'Brien v. State,* 711 P.2d 1144 (Wyo. 1986). *See Small v. State,* 689 P.2d 420 (Wyo.1984), *cert. denied* 469 U.S. 1224, 105 S.Ct. 1215, 84 L.Ed.2d 356 (1985).

Subsequent to the *Kendig* decision, Wyo. Const. art. 10, § 4, was amended, again, to add the last two sentences. The legislature then consistently amended the Wyoming Worker's Compensation Act to provide that coverage under it could be extended to all employment, including nonhazardous employment, at the election of the employer. Section 27–14–103(g), W.S. 1977 (June 1987 Repl.). *See State, ex rel. Wyoming Workers' Compensation Division v. Hollister,* 794 P.2d 886 (Wyo.1990). At the same time, the employer's immunity was extended to a co-employee, acting within the scope of his employment, without regard to the degree of negligence. Essentially, so long as the co-employee is acting within the scope of employment, co-employee liability has been abolished. Section 27–14–104(a), W.S.1977 (Cum.Supp. 1989) These amendments represent the current state of the law with respect to worker's compensation in Wyoming so far as co-employee responsibility is concerned.

 It is against this background of legal history that these cases protesting the constitutionality of the amendment affording immunity to co-employees acting within the scope of employment are presented. There are several principles that we must apply in addressing constitutional issues. Our court recognizes that "statutes are presumed to be constitutional unless affirmatively shown to be otherwise, and one who would deny the constitutionality of a statute has a heavy burden. The alleged unconstitutionality must be clearly and exactly shown beyond any reasonable doubt." *Stephenson,* 569 P.2d at 97. *See Baskin; O'Brien; Budd v. Bishop,* 543 P.2d 368 (Wyo.1975); *State v. Stern,* 526 P.2d 344 (Wyo.1974); *Johnson v. Schrader,* 507 P.2d 814 (Wyo.1973); *Zancanelli.* The duty of the court is "to uphold the constitutionality of statutes which the legislature has enacted if that is at all possible, and any doubt must be resolved in favor of constitutionality. [citations omitted]" *Kendig,* 641 P.2d at 1239, citing *Washakie County School District Number One v. Herschler,* 606 P.2d 310 (Wyo.1980), *reh. denied, cert. denied* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980). *See Billis v. State,* 800 P.2d 401 (Wyo.1990); *Witzenburger v. State ex rel. Wyoming Community Development Authority,* 575 P.2d 1100, *reh. denied* 577 P.2d 1386 (Wyo. 1978). A party attacking a statute on con-

stitutional grounds must do more, if that party is to succeed, than merely make bald assertions of whatever is perceived to create a constitutional problem. *Stephenson; Bell v. Gray*, 377 P.2d 924 (Wyo.1963). It is incumbent upon the party asserting that legislative enactments are unconstitutional to provide facts and cogent argument in support of its contention. *Phillips v. ABC Builders, Inc.*, 611 P.2d 821 (Wyo.1980).

■ If, among the constitutional questions raised, there are concerns about classifications and equal rights, we also are cognizant of the principle that any fact that can be reasonably conceived to sustain the classification will be assumed and that the court applies the "rational basis" test, not the more rigid "strict scrutiny" test, when an ordinary interest is involved. *Kendig.* It is within the parameters of these fundamental principles that we consider the appellants' several issues and arguments.

The appellants attack the latest version of § 27–14–104, W.S.1977 (Cum.Supp.1989), from several quarters, albeit each attack addresses constitutional ramifications. Mills and Bunker initially assert that the statute is contrary to the provision of Wyo. Const. art. 10, § 4, that "[n]o law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person." In addition, they contend that the statute violates another phrase of the same constitutional provision by failing to restrict protection under the worker's compensation act to the "employer contributing as required by law." In a very broad constitutional condemnation, these appellants vigorously contend that § 27–14–104, W.S.1977 (Cum.Supp.1989), violates Wyo. Const. art. 1, §§ 2, 3, 6, 7, 8, 9, and 34, and art. 3, § 27, because it denies equality to all members of the human race in the right to life, liberty, and the pursuit of happiness; denies equal political rights, equality in civil rights, and equal privileges among all citizens; denies injured workers due process of law; allows for the absolute and arbitrary use of power; fails to allow equal access to the courts for all citizens; fails to accede to the constitutional principle that the right to a jury trial is inviolate;

fails to accommodate the principle that all laws shall have a uniform operation; and fails to prohibit special legislation, especially special legislation calling for the " 'limitation of civil actions' and which *grants to any* corporation, association or *individual * * * any special exclusive* privilege, *immunity* or franchise whatsoever (emphasis added by appellants)."

■ We have considered these several contentions, and the arguments offered in support of them, in light of our standards for addressing the constitutionality of statutes. We have included not only the arguments of the appellants but those made by the *amicus curiae* who offered briefs in support of the appellants' position. We hold that § 27–14–104, W.S.1977 (Cum. Supp.1989), meets the demands of the Constitution of the State of Wyoming in every respect and, more specifically, we rule that the legislature appropriately has the authority to eliminate any and all causes of action accruing against an injured worker's co-employee when, or if, that co-employee causes, or allegedly causes, an injury while acting within the scope of his employment for an employer covered in the act. This conclusion results in affirming the decision of the district court.

The foregoing represents our decision in this case, but it is appropriate to develop our analysis so that it addresses each of the asserted issues. The first claim of the appellants is that this statute violates the provisions of art. 10, § 4, because it effectively limits the damages recoverable from a negligent co-employee to nothing. Wyo. Const. art. 10, Section 4; § 27–14–104, W.S. 1977 (Cum.Supp.1989). This contention culminates with the argument that, given this first sentence of art. 10, § 4, a constitutional amendment similar to that offered in 1914 is required to, in effect, abolish such a common law cause of action and that the statute must be held void and of no effect because no such amendment has been adopted. This contention is resolved by simply applying and extending the holding in *Kendig.* In affirming the constitutionality of the statute that restricted suits against co-employees to conduct involving

"culpable negligence," the court also affirmed the requisite authority in the legislature to define the degree of negligence required for an injured worker to recover from a co-employee. *Kendig.* In the process, the court clearly articulated the proposition that a requirement of proof of the more stringent standard of culpable negligence over the standard of ordinary negligence did not have the effect of limiting the amount of damages but, instead, only restricted a cause of action. *Kendig.* The logical extension of that rationale leads to the same result in this case.

■ The state legislature, in its enactment of the amendments represented in Section 27–14–104, W.S.1977 (Cum.Supp. 1989), has done nothing more than further limit the cause of action against a co-employee. Given the acknowledged power of the legislature to restrict a cause of action as represented by the decision in *Kendig,* the constitution imposes no further restraints upon the authority of the legislature to restrict the cause of action even to the point of apparent extinction. The fallacy in the arguments presented by Mills and Bunker is that the distinction between limiting the amount of damages to be recovered and the restriction of a cause of action is ignored. *See Kendig.* Our precedent has established the authority of the legislature to grant a degree of immunity to co-employees, and that rationale establishes the authority of the legislature to offer full immunity to co-employees functioning within the scope of their employment. In this regard, it is important to acknowledge the *Amicus Curiae* Brief of the State of Wyoming in which the point is made that the statute does not abolish all claims against co-employees because, certainly, an action can be brought if the co-employee has removed himself from the scope of employment. The holding that the legislature is without authority to so limit a claim would require us to overrule the decision in *Kendig,* and we have not been presented with justification for that result. Furthermore, the court noted in *Markle* that the legislature could extend the immunity afforded in the statue by specifically so pro-

viding; the rationale of that case was that the legislature had not so provided.

A plain reading of the first sentence of Wyo. Const. art. 10, § 4, considered in the context of the whole provision, serves to reinforce our refusal to find the statute unconstitutional and does not, contrary to the appellants' position, prove that the elimination of co-employee suits is unconstitutional. *Cf. Parker v. Energy Development Company,* 691 P.2d 981 (Wyo.1984) (conflict between an earlier constitutional provision and an amended version resulting in preference being given to the amendment). A construction of the amended constitutional provision to the end that the foreclosure of employee actions against the employer would be the sole limitation permissible with respect to the amount of damages, as these appellants implicitly urge, would simply present an ambiguity that would render the first sentence meaningless. If that sentence were construed as these appellants urge, in light of the additional language, there would be a direct conflict that could make the first sentence superfluous. We do not interpret constitutional language in that way. *Richardson v. Schaub,* 796 P.2d 1304 (Wyo. 1990); *Halliburton Company v. McAdams, Roux and Associates,* 773 P.2d 153 (Wyo.1989); *Sanchez v. State,* 751 P.2d 1300 (Wyo.1988); *Reliance Insurance Company v. Chevron U.S.A., Inc.,* 713 P.2d 766 (Wyo.1986). Instead, we follow the preferred rule of construction pursuant to which every word, clause, and sentence is given effect so that no part becomes inoperative. *State of Wyoming ex rel. Workers' Compensation Division v. Halstead,* 795 P.2d 760 (Wyo.1990); *Story v. State,* 755 P.2d 228 (Wyo.1988), *cert. denied* —— U.S. ——, 111 S.Ct. 106, 112 L.Ed.2d 76 (1990); *Attletweedt v. State,* 684 P.2d 812 (Wyo.1984).

■ Following our principle that all components of the constitution must be construed in *pari materia,* in that all words of the constitution must be understood in relation to one another so as to allow a meaningful interpretation of the constitutional purpose, we conclude that the only feasible

construction of the amended portion of art. 10, § 4, is that the limitation upon actions by an employee, as it is described within the section, must be a restraint on a cause of action and not a limitation upon the amount of damages. *See Thomson v. Wyoming In-stream Flow Committee,* 651 P.2d 778 (Wyo.1982). *See also Story; State Board of Equalization v. Tenneco Oil Company,* 694 P.2d 97 (Wyo.1985); *Kendig.* If, in drafting the amendment, the foreclosure of employee actions had been described as an exception to the prohibition on the enactment of laws "limiting the amount of damages to be recovered for causing the injury or death of any person," we then could consider that, even though it certainly restrains the cause of action as well, as being no more than a constitutionally established permissible limitation on damages. If the amendment had been so drawn, the contention of the appellants would not be without merit because all other non-enumerated limitations would be impermissible, and the first sentence would be afforded efficacy. The fact, however, is that the amendment contains no exception language, and the omission of those words must be considered intentional. *Carroll By and Through Miller v. Wyoming Production Credit Association,* 755 P.2d 869 (Wyo.1988).

▪ The logical result then is that, to avoid an irreconcilable conflict and to give effect to all provisions of the constitution, we must construe the prohibition against lawsuits by an employee against his employer to be something different from a limitation on damages, even though a similar ultimate result may attach in some situations. *Story; Attletweedt.* The reasonable conclusion, we reiterate, is that it is a restriction on the cause of action. *Kendig. See Thomson; Witzenburger,* 575 P.2d 1100. Such a restriction is not prohibited by the constitution. *Witzenburger.* As to the first claim of the appellants, the preclusion of an action against the employer is not a limitation on damages and, thus, is not foreclosed by Wyo. Const. art. 10, § 4. A similar restriction then, even though premised on some other ground as in this case, is likewise not foreclosed by this section. Given the constitution as it now stands, it is not necessary to amend it to foreclose a cause of action against the negligent co-employee.

▪ The second issue urged by the appellants is premised upon their contention that the amended statute must be held unconstitutional because it fails to narrowly limit the immunities granted under the act to an "employer contributing as required by law to such fund * * *." *See Stratman v. Admiral Beverage Corporation,* 760 P.2d 974 (Wyo.1988); *Fiscus v. Atlantic Richfield Company,* 742 P.2d 198 (Wyo.1987); *Bence v. Pacific Power & Light Company,* 631 P.2d 13 (Wyo.1981). Mills and Bunker argue that the amendment that enabled the adoption of the Worker's Compensation Act was framed with the express provision that it should be limited to such employers, and the result that must follow is that the immunity provisions are to be strictly construed and narrowly applied. Our understanding of the relevant provision, however, does not confirm the existence of such a limitation, and our research has not disclosed a legislative intent to establish such a limitation. It is true that the amended section specifically mandates that "[t]he right of each employee to compensation from such fund shall be in lieu of * * * any and all rights of action against any employer contributing as required by law to such fund * * *," but nothing in the section even implicitly demands that the restriction is limited only to such employers. The legislature in this state may permissibly enact any law that is neither expressly nor inferentially prohibited by the constitution. *Witzenburger; Bulova Watch Company v. Zale Jewelry Company of Cheyenne,* 371 P.2d 409 (Wyo.1962). There exists no readily apparent rationale to justify the claim of these appellants that the protections under the Worker's Compensation Act must be limited to only those employers "contributing as required by law to such fund."

The appellants, however, strongly urge us to consider policy justifications hinging on fairness and due process that, in their

view, would necessarily preclude any other application of the protections extending to the employer under the act. The argument is that "no one but the employer and the employee who gets the compensation benefits have given up anything in the bargain" and that a co-employee is, therefore, not entitled to immunity since "a co-employee has given up nothing and, under Section 27–14–104, gets everything." The argument in the briefs then relates this claim of inequity to a deprivation of due process under Wyo. Const. art. 1, § 6, by asserting that to allow an immunity under the Worker's Compensation Act to a party not suffering a detriment is substantively unfair to those workers who suffer the injury and is inherently unconstitutional because fairness is the cornerstone of due process. *See* Wyo. Const. art. 1, § 6. The detriment perceived to be suffered is the worker's loss of his fundamental right to sue. Relying on *Zancanelli*, Mills and Bunker argue that the absence of this *quid pro quo*, both because it is unfair and because it is a violation of the due process rights owed to the injured party, justifies a strict application of Wyo. Const. art. 10, § 4, as they demand. *See Zancanelli.* We conclude that this argument must be rejected.

 First, we are not satisfied as to the absence of a *quid pro quo* between the injured employee and his co-employee. Instead, in a greater sense, both gain something and give up something under the statutory amendment. Every worker is a co-employee of any other worker and, even though he loses a right to sue his fellow worker, also is afforded protection from any action against him by his co-worker. This is a *quid pro quo.* More importantly, however, the appellants misconstrue our judicial powers relative to those of the legislature. Even if we were to agree with their contention, which we have said we do not, we are not justified in overruling a legislative enactment simply because we perceive it to be unfair. The only power possessed by the judicial department to negate legislative actions is found in the conclusion that the enactment is unconstitutional. Any lack of a *quid pro quo*, even though that has been a popular justifica-

tion for the worker's compensation statute, whether fair or unfair, does not offer a proper ground to declare a statute unconstitutional. In our view, it is unnecessary for the draftsman to justify, or refute, constitutional amendments with policy arguments. *See Hoem v. State*, 756 P.2d 780 (Wyo.1988). An amendment, once passed, exists and takes effect. Its existence is sufficient for our purposes. Once the constitutional provision is adopted, the duty of the court is to follow it, and our only power is to determine the unconstitutionality of subsequent enactments. The only time policy considerations are relevant to constitutional dictates is in the public debate leading to their adoption when those who favor the amendment are attempting to sway the political majority to their views.

 Neither can we perceive how the alleged lack of *quid pro quo* ties into due process, even though the appellants' arguments are creative and, to a degree, attractive. Due process presents both substantive and procedural facets. Wyo. Const. art. 1, § 6; *Cheyenne Airport Board v. Rogers*, 707 P.2d 717 (Wyo.1985), *appeal dismissed, sub nom Rogers v. Cheyenne Airport Board*, 476 U.S. 1110, 106 S.Ct. 1961, 90 L.Ed.2d 647 (1986). Substantive due process is infringed if a statute is arbitrary and fails to promote a legitimate state objective by reasonable means. *Moreno v. State Dept. of Revenue and Taxation*, 775 P.2d 497 (Wyo.1989). This particular application of the Wyoming Worker's Compensation Act does not meet those criteria so that a conclusion that substantive due process is violated is justified. Procedural due process is governed by fundamental fairness concepts, and the appellants do allege a denial of fundamental fairness because of a lack of *quid pro quo*, but there is no showing made of a procedural defect in this instance. *See Munoz v. Maschner*, 590 P.2d 1352 (Wyo.1979).

Mills and Bunker next argue, still in support of their second issue, that giving a negligent co-employee "something for nothing" violates the injured worker's rights to access to the courts and trial by jury. *See* Wyo. Const. art. 1, § 8. They cite *Hoem*

for the proposition that the short-lived medical review panel proceedings were deemed unconstitutional because they unjustifiably delayed bringing medical malpractice suits to court, and they then argue that the complete eradication of a cause of action certainly amounts to "a total denial of justice and access to court" and a similar denial of the right to trial by jury. Wyo. Const. art. 1, §§ 8 and 9. *Hoem* is readily distinguishable from this case, and the propositions for which it stands do not offer authority for the argument now asserted by Mills and Bunker.

While in effect, the Wyoming Medical Review Panel Act, §§ 9–2–1501 to –1511, W.S.1977 (June 1987 Repl.), mandated, by one of its key provisions, that no complaint alleging medical malpractice could be filed in court unless a claim had first been filed with a statutorily specified review panel and a decision rendered. *Hoem.* The decision by the Medical Review Panel was not subject to court review, was not binding on either party, and was not admissible at trial. Sections 9–2–1509 to –1511, W.S. 1977 (June 1987 Repl.) (since repealed). Among a number of contentions, including one alleging an impediment to free access to the courts, the plaintiff in *Hoem* had argued that the Medical Review Panel Act violated equal protection of the law in that it arbitrarily "singles out a limited class of health class providers for special protection while, on the other hand, it places an added burden on persons injured by health care providers." *Hoem,* 756 P.2d at 782. *See* Wyo. Const. art. 1, §§ 2, 3, 6, 7, 8, 34; art. 3, § 27. This court agreed.

 Because the Medical Review Panel Act was found to be unconstitutional on that basis, the court declined to address other contentions, including one that alleged a denial of free access to the courts. *See K.N. Energy Corporation v. City of Casper,* 755 P.2d 207 (Wyo.1988); *Nehring v. Russell,* 582 P.2d 67 (Wyo.1978). Had the court chosen to address that issue in *Hoem,* and had it held the Medical Review Panel Act was one that denied access to the courts, the case still would not be dispositive, in this instance, because the circumstances are significantly different. In *Hoem,* the Medical Review Panel Act created a situation in which the parties had to follow a unique process before proceeding to trial even though they may have possessed a viable cause of action. In a sense, that act did no more than establish an additional jurisdictional roadblock. Nothing in the Worker's Compensation Act, either before or after the 1986 amendment, delays or forecloses an injured worker from filing, and attempting to pursue, his claim, whatever it may be, through the courts. Even with the restrictions found in the act and the constitution, there is no barrier to the access of the worker to the courts. Our constitutional guarantee of access to the court means just that and no more. *Mull v. Wienbarg,* 66 Wyo. 410, 212 P.2d 380 (1949).

While the constitution also guarantees that justice shall be "administered without sale, denial, or delay," there is no guarantee that an unhappy litigant will maintain a viable claim once he finds himself in court. Wyo. Const. art. 1, § 8. *See Kendig.* The lack of an actionable claim, or even elimination of a cause of action, is not the same thing as denying a party access to the courts. "Where no right of action is given, however, or no remedy exists, under either the common law or some statute, those constitutional provisions create none." *Mull,* 212 P.2d at 382. "The right and power, as well as the duty, of creating rights and to provide remedies, lies with the legislature, and not with the courts." *Mull,* 212 P.2d at 382. The fact that the constitution guarantees access to the court, and that it is not permissible to deny access, does not guarantee a recovery, nor does it demand that a remedy be available. The absence of a right to recover does not equate to a denial of access to the courts. Section 27–14–104, W.S.1977 (Cum.Supp. 1989), does not deny any injured worker access to the courts or a right to a jury trial.

We move now to the third, and final, issue asserted by Mills and Bunker in which they assert a broad spectrum claim that the accused statute violates Wyo. Const. art. 1, §§ 2, 3, 6, 7, 8, 9, and 34, and

art. 3, § 27. These appellants say that the several constitutional provisions:

" * * * [P]rovide for equality among all members of the human race in the right to life, liberty, and the pursuit of happiness; equal political rights, equality in civil rights, and equal privileges among all citizens; due process of law; prohibit absolute and arbitrary uses of power, even by the greatest majority; provide for equal access to the courts for all citizens; provide that the right to a jury trial is inviolate; provide that all laws shall have a uniform operation; and which prohibit special legislation, especially special legislation which calls for the 'limitation of civil actions,' and which grants 'to any corporation, association or individual ... any special exclusive privilege, immunity, or franchise whatever' " (emphasis added by appellants).

Earlier, we addressed the claim that this amended statute deprives these appellants of due process and their right of access to the courts in a trial by jury. There is no necessity to address those particular provisions any further. The remaining aspects of this very broad claim can be identified with two main contentions. The first of those is that § 27–14–104, W.S.1977 (Cum. Supp.1989), violates some workers' rights to equal protection; the second is that the statute amounts to special legislation. Although these two contentions address different areas of the constitution, they are sufficiently similar in the context of this case that we treat them together. We simply are unable to perceive any violation of art. 1, § 3, which articulates political rights.

 In support of their premise, Mills and Bunker argue that the grant of co-employee immunity is not extended to all Wyoming workers since it applies only to those workers involved in extrahazardous employments as identified by § 27–14–103, W.S.1977. In their brief, the appellants concede that Section 27–14–103(g), W.S. 1977 (Cum.Supp.1989), permits any employer who is not engaged in extrahazardous employment to elect to be included in the system. Upon reflection, in the context of this case, we conclude that this extension of the benefit of the statute to nonhazardous employments is dispositive of that aspect of the claim made by the appellants. By its enactment, the legislature has provided a means whereby each and every Wyoming employer, and thus each and every Wyoming employee, can be covered under the Worker's Compensation Act. Because every worker in Wyoming now may receive an equal benefit under the act with respect to the protection afforded the co-employee, there seems no prospect of supporting the claim of a deprivation of equal protection. See Bell v. State, 693 P.2d 769 (Wyo.1985). Cf. Small, 689 P.2d 420 (statute not violating equal protection merely because it could have included other persons).

The difficulty of identifying special legislation is at least at the same level. See Kendig. If deficiencies in either area existed prior to 1986, § 27–14–103(g), W.S. 1977 (Cum.Supp.1989), has, contrary to the position asserted by the appellants, cured that defect. The appellants do not chose to acknowledge this universal application, however, and cite Phillips, 611 P.2d 821, and Hoem to support their position. In Phillips, the constitutionality of a questionable statute of limitations shielding "any person performing or furnishing the design, planning, supervision, construction or supervision of construction for" improvements to real property was at issue. Phillips, 611 P.2d at 822. Relying upon persuasive authority from a number of jurisdictions, this court held that the statute, § 1–3–111, W.S.1977, was unconstitutional in that, instead of being a statute of limitations, it was a grant of immunity conferred on an extremely narrow band of defendants. See Phillips. Though that case certainly is the law, we do not find it applicable to the problems presented in this case because the provisions of the accused statute, now available to all Wyoming workers, is not limited to such an extremely narrow group.

 Similarly, we reject Hoem as authority for the appellants' arguments on the same reasoning. The protections in

that case were also limited to an extremely narrow class of health providers. *See Hoem.* Moreover, we hold that a classification potentially consisting of all Wyoming workers to be sufficiently broad to defeat any and all allegations of special legislation. *See Phillips; Kendig.* The Wyoming Worker's Compensation Act operates alike on all employees functioning in the same, or similar, circumstances. *See Kendig; Mountain Fuel Supply Company v. Emerson,* 578 P.2d 1351 (Wyo.1978). It is our conclusion, and we so hold, that Wyo. Const. art. 10, § 4, does not inhibit the legislature from extending the same tort immunities now granted to Wyoming employers to Wyoming employees acting within the scope of their employment. The provision that is claimed to be unconstitutional, § 27–14–104, W.S.1977 (Cum.Supp. 1989), does not violate the provisions of Wyo. Const. art. 1, §§ 2, 3, 6, 7, 8, 9, and 34, and art. 3, § 27.

The summary judgments granted by the district court are respectively affirmed.

CARDINE, J., filed a concurring opinion.

URBIGKIT, C.J., filed a dissenting opinion in which MACY, J., joined.

CARDINE, Justice, concurring.

I concur in the opinion of Justice Thomas. I have no doubt that the legislature can create or eliminate causes of action. I am reminded of the "Heart Balm" statutes passed to abolish the common law cause of action for breach of promise to marry. The original version of the current "Heart Balm" statutes, W.S. 1–23–101 through –104, was enacted in 1941. In passing the session law eliminating causes of action for alienation of affection, criminal conversation, seduction, etc., the legislature gave the following reason for their enactment:

"The remedies heretofore provided by law for the enforcement of actions based upon alleged alienation of affection, criminal conversation, seduction and breach of contract to marry, having been subjected to grave abuses, causing extreme annoyance, embarrassment, humiliation and pecuniary damage to many persons wholly innocent and free of any wrongdoing, who were merely the victims of circumstances, and such remedies having been exercised by unscrupulous persons for their unjust enrichment, and such remedies having furnished vehicles for the commission or attempted commission of crime and in many cases having resulted in the perpetration of frauds, it is hereby declared as the public policy of the State that the best interests of the people of the State will be served by the abolition of such remedies. Consequently, in the public interest, the necessity for the enactment of this article is hereby declared as a matter of legislative determination." 1941 Wyo.Sess.Laws ch. 36 § 1.

One case presenting this cause of action was heard by the Wyoming Supreme Court before enactment of W.S. 1–23–101 through –104. In that case, *Worth v. Worth,* 48 Wyo. 441, 49 P.2d 649, 103 A.L.R. 107 (1935), this court, based upon the trial court's failure to give instructions concerning a presumption of the good faith of parents and proof necessary to rebut it, reversed a $10,000 judgment in favor of the plaintiff against her in-laws. The constitutional power of the legislature to abolish this cause of action is so clear, it has never been questioned.

URBIGKIT, Chief Justice, dissenting, with whom MACY, Justice, joins.

Are workers in Wyoming to be essentially unprotected from injurious acts which are culpably, willfully or criminally inflicted against them by co-workers by the barrier which has been applied legislatively to deny to them rights for civil justice to properly recover for resulting personal injury? Believing that the Wyoming Constitution says what it says and means what it was intended to provide in protection for citizens against a statist government, I respectfully dissent.

I.

UNSAFE WORK PLACE—RIGHT TO INJURE OR KILL

These cases come to this court to present a constitutional challenge to a statutory

provision which deleted any rights of workers to recover for injury causing acts of co-employees. *See Wessel v. Mapco, Inc.*, 752 P.2d 1363, 1366, n. 3 (Wyo.1988). As amended by the legislature in 1986, W.S. 27–14–104(a), the Wyoming Worker's Compensation statutes eliminated an injured employee's cause of action against a co-employee acting within his scope of employment. Consequently, regardless of culpable negligence, criminal behavior or intentionally tortious conduct, the statute completely eliminates the possibility of recovering damages as explicitly protected by Wyo. Const. art. 10, § 4. W.S. 27–14–104(a) violates the constitutionally protected right of an injured person to redress a wrong, amounts to special legislation, and violates substantive due process. I do not accept this further denigration of guarantees of individual rights which the Wyoming Constitution was written to protect.

Contrary to the majority opinion, in which this court again fails to recognize that, with limited exceptions,[1] immunity is "an outmoded anachronism of [questionable] history and parentage," I would hold that the legislature is constitutionally foreclosed from extending absolute immunity to co-employees even when acting within the scope of their employment under the Wyoming Worker's Compensation Act. *White v. State*, 784 P.2d 1313, 1360 (Wyo. 1989), Urbigkit, Justice, dissenting. I write to express my unwavering conviction that the injured appellants in these cases are constitutionally entitled to their day in court. In addition, I write to continue my battle against the injustice which comes when liability is decoupled from criminal conduct, intentional misconduct or culpable negligence via legislative extension of absolute immunity in derogation of the Wyoming Constitution. *See White*, 784 P.2d at 1324, Urbigkit, Justice, dissenting and *Cooney v. Park County*, 792 P.2d 1287 (Wyo. 1990), Urbigkit, Justice, dissenting. In ef-

fect, W.S. 27–14–104(a), as amended by the legislature in 1986 and as upheld by the majority of this court in this instance, creates a "right to kill" one's fellow employee without risk or threat of civil liability.

In simplest terms, the end result of W.S. 27–14–104(a) and the majority holding in these cases is that everyone loses except the wrongdoer. The injured employee loses because he is denied the opportunity to recover damages for injuries caused by a culpably negligent or intentionally tortious co-employee. The employer loses because he is unable to minimize his premium contributions to the Worker's Compensation fund and because employees protected with absolute immunity are less motivated to share responsibility for a safe work place. The Worker's Compensation fund loses because it is unable to recover benefit payments otherwise due through the Act's third-party recovery lien provision. Ultimately, the citizens of Wyoming lose because the legislature and the majority of this court abandon the Wyoming Constitution and extinguish protected rights. The only overt winner is a criminal, culpably negligent or intentionally tortious co-employee who escapes liability and receives opportunity carte blanche to act with impunity. The covert winner is the general insurance liability carrier whose claim costs are reduced and whose actual coverage is compressed.

I would find W.S. 27–14–104(a) unconstitutional and would reverse the district court's grant of summary judgment. By so doing, I would open the courthouse doors to employees injured at the hands of culpably negligent, criminal or intentionally tortious co-employees. It is constitutionally impermissible, in my opinion, to legislate a more dangerous work place by eliminating rights to justice for the laborers. We reverse a century of industrial effort to accomplish work place health and safety.[2]

---

1. "Immunity beyond that necessary for ministerial, discretionary, legislative, or judicial functions is no more than a reincarnation of past mistakes * * *." *White v. State*, 784 P.2d 1313, 1339 (Wyo.1989) (Urbigkit, J., dissenting).

2. The majority result in this case is reminiscent of the *In re Slaughter–House Cases*, 16 Wall. 36, 83 U.S. 36, 21 L.Ed. 394 (1872). Such action emasculates the grandest ambitions of the framers of the Wyoming Constitution. *See also White v. Greenhow*, 114 U.S. 307, 5 S.Ct. 923, 29

## II.

## STANDARD OF REVIEW

While I agree with the general statement of this court's standard of review set forth in the majority opinion, I find the summary of applicable principles to be incomplete. I would add the following statutory and constitutionally determinative provisions previously adopted by this court for judicial review of Worker's Compensation legislation.

In *Seckman v. Wyo–Ben, Inc.*, 783 P.2d 161 (Wyo.1989), we identified the underlying purpose and application of the Act. We stated:

> Unlike most statutes that abrogate common law rights and must, for that reason, be strictly construed * * *, the Wyoming Worker's Compensation Act * * *, is to be interpreted in a reasonably liberal fashion so that the legislative goals that obviously are intended may be accomplished * * *. Whenever possible, the Act should be applied in favor of the workman * * *, so that industry, and not the individual employee, bears the burden of accident and injury occurring within the industrial setting.

*Id.* at 165. I find the result reached by the majority in these cases to be counterproductive to the underlying purpose of the Worker's Compensation Act. In direct contrast to the stated legislative purpose, the majority does not apply the Act in favor of injured workmen. Instead, the majority reaches the result that a legislative grant of statutory immunity is a superior right to the constitutionally mandated right of an individual to recover damages for injuries. In recognition of an injured employee's eligibility to collect modest Worker's Compensation benefits and by upholding the constitutionality of W.S. 27–14–104(a), this court requires that an injured employee bear practically the full burden of his injuries without redress for damages.[3]

For example, in *Bence v. Pacific Power and Light Co.*, 631 P.2d 13 (Wyo.1981), we held that immunity provisions in the Worker's Compensation Act must be narrowly construed. In deciding whether immunity extends to a non-employer, we ruled that a non-employer "should not enjoy an immunity that it has not paid for." *Id.* at 18. *See also Robinson v. Bell*, 767 P.2d 177 (Wyo. 1989); *Stratman v. Admiral Beverage Corp.*, 760 P.2d 974 (Wyo.1988); and *Fiscus v. Atlantic Richfield Co.*, 742 P.2d 198 (Wyo.1987). In light of our unequivocal analysis in these cases, I find no legislative authority to extend absolute immunity to co-employees who do not "pay" for the privilege.

## III.

## WHOSE QUID PRO QUO

I reject the majority's analysis of and conclusion that a *quid pro quo* relationship

---

L.Ed. 199 (1885); *Virginia Coupon Cases*, 114 U.S. 270, 5 S.Ct. 903, 29 L.Ed. 185 (1885); and Gerhardt, *The Ripple Effects of Slaughter-House: A Critique of a Negative Rights View of the Constitution*, 43 Vand.L.Rev. 409 (1990). The nullification of constitutional rights by legislative enactment and by judicial absolution is unconscionable.

**3.** It should not be forgotten that the basic law of Wyoming was stated by the drafters of our constitution in Wyo. Const. art. 19, § 7:

> It shall be unlawful for any person, company or corporation, to require of its servants or employes as a condition of their employment, or otherwise, any contract or agreement whereby such person, company or corporation shall be released or discharged from liability or responsibility, on account of personal injuries received by such servants or employes, while in the service of such person, company or corporation, by reason of the negligence of such person, company or corporation, or the agents or employes thereof, and

such contracts shall be absolutely null and void.

and Wyo. Const. art. 1, § 22:

> The rights of labor shall have just protection through laws calculated to secure to the laborer proper rewards for his service and to promote the industrial welfare of the state.

The purpose of the 1913 legislative resolution from which the Worker's Compensation amendment came was not to legitimize yellow dog contracts by state legislative enactment, which is now the effect of this legislation here under review. This court takes the carefully considered and presented progressive plan for compensation insurance involving employer and employee, see Governor Joseph M. Carey's Address to the Twelfth Wyoming State Legislature, 6 House Journal at 40 (1913), and, for political purposes of whatever persuasion, creates a kind of yellow dog contract between fellow employees by governmental fiat.

exists between co-workers.[4] I would hold that when constitutionally protected rights are violated by legislative enactment, the underlying policy justification is always relevant to judicial review and particularly so when crafted as special interest legislation. *See Grantham v. Denke*, 359 So.2d 785, 787 (Ala.1978); *Kandt v. Evans*, 645 P.2d 1300, 1305 (Colo.1982); and *see generally*, Note, *Massey v. Selensky: Workers' Compensation and Coemployee Immunity in Montana*, 46 Mont.L.Rev. 217, 224–28 (1985). Recognizing a legislative grant of absolute immunity to co-employees for culpably negligent or intentionally tortious conduct eviscerates the intent and clear language of Wyo. Const. art. 10, § 4 as well as overrules *sub silentio* this court's holdings in *Bence*. Additionally, since this is purely special interest legislation, we now ignore the preclusion implicit in most sections of Wyo. Const. art. 1 and explicit in Wyo. Const. art. 3, § 27, special and local laws prohibited.

In *Mauch v. Stanley Structures, Inc.*, 641 P.2d 1247 (Wyo.1982), a case decided the same day as *Meyer v. Kendig*, 641 P.2d 1235 (Wyo.1982), we considered the *quid pro quo* relationship between an employer covered under the Act and his employees.

> It is the employer who contributes to the fund and it is the employer's contributions which fund payment to workers for those injuries not occasioned by the employer's fault or negligence. In return for that contribution, the employer is granted immunity from suit. Neither the injured employee nor the co-employee contribute to the fund. A rational basis thus exists for treating the employer differently from his employees with respect to the extent of immunity.

*Mauch*, 641 P.2d at 1251. In this case, this court recognized the existence of a rational basis for treating contributing employers and co-employees differently with regard to immunity. I find nothing has changed with the passage of time or over the course of events which now justifies treating contributing employers and co-employees identically.

## IV.

### CONSTITUTIONAL ANALYSIS

"While it is our duty to give great deference to legislative pronouncements and uphold constitutionality when possible, it is likewise our equally imperative duty to declare a legislative enactment invalid if it transgresses the state constitution." *Witzenburger v. State ex rel. Wyoming Community Development Authority*, 575 P.2d 1100, 1114, *reh'g denied* 577 P.2d 1386 (Wyo.1978). *See Brenner v. City of Casper*, 723 P.2d 558, 560 (Wyo.1986). The majority decision in this case fails to recognize the constitutional transgressions of W.S. 27–14–104(a). "The State Constitution is a limitation, not a grant, of power, and, as a result, the legislature possesses all legislative authority except as restricted by the State Constitution, either expressly or by *clear* implication." *Witzenburger*, 575 P.2d at 1146 (citing *State ex rel. Board of Commissioners of Goshen County v. Snyder*, 29 Wyo. 199, 212 P. 771 (1923) and 16 C.J.S. *Constitutional Law* § 70 (1984) and emphasis in original), Rose, Justice, dissenting. I would conclude, as Chief Justice Rose did in his dissent in *Kendig*, that Wyo. Const. art. 10, § 4, expressly precludes the legislature from extending immunity to co-employees.

I would also hold that Wyo. Const. art. 1, § 8,[5] when read in conjunction with Wyo.

---

**4.** If there is a quid pro quo, it is that the worker gives up everything in return for nothing. If the idea presented by the majority is correct, we should give general immunity to the slothful criminal and intentionally harmful among our citizens and absolve all rights of recovery for damage sustained by the innocent victims. The quid pro quo in this case is enjoyed absolution of responsibility given to insurance companies who otherwise will be called to respond under insuring policies for wrongful conduct of those

who are insured. The employee gains nothing and the law was in no way intended to provide employee benefits. It is an insurance company benefit enactment, except I am not so naive as to fail to recognize some benefit also in employer's reduced premiums paid for general liability insurance which may cover officers, management and supervisors who determine the safety of the workplace.

**5.** Wyo. Const. art. 1, § 8 states in part that "[a]ll courts shall be open and every person for an

Const. art. 10, § 4, forbids unlimited legislative discretion to close the doors of the courts in this state to workers intentionally injured by co-employees.[6] Similarly, I would apply Wyo. Const. art. 3, § 27[7] and Wyo. Const. art. 1, § 8 to assure citizens of Wyoming access to the state's courts as this court did in *Phillips v. ABC Builders, Inc.*, 611 P.2d 821 (Wyo.1980). Wyo. Const. art. 3, § 27 specifically limits legislative power, and I would construe this provision as evidence that the framers of the Wyoming Constitution intended this court to exercise a substantial checking function over legislative authority which infringes on constitutionally protected rights. *See* Keiter, *An Essay on Wyoming Constitutional Interpretation,* XXI Land & Water L.Rev. 527, 556 (1986).

The majority states that the test for whether or not substantive due process has been infringed is "if a statute is arbitrary and fails to promote a legitimate state objective by reasonable means." (Citing *Moreno v. State, Dept. of Revenue and Taxation,* 775 P.2d 497 (Wyo.1989).) The majority opinion dismisses appellants' substantive due process arguments in a single sentence and concludes without analysis that, "this particular application of the Wyoming Workers' Compensation Act does not meet those criteria so that a conclusion that substantive due process is violated is justified."

I would conclude otherwise. I find that the legislative extension of immunity to co-employees, without regard to the degree of negligence or the qualitative distinction between negligence and intentionally tortious conduct, is an arbitrary deprivation of the appellant's right to recover damages for injuries. *Saylor v. Hall,* 497 S.W.2d 218 (Ky.1973). Legislation which limits damages cannot pass the rational basis test. Such legislation, on its face, discriminates against a more seriously injured victim·since Worker's Compensation benefits will quite often fail to cover all economic losses, to say nothing of `compensating for pain, suffering, and other related damages. More significantly, I recognize no state objective, legitimate or otherwise, which is promoted by the extension of immunity to co-employees.

## V.

## OUR HISTORY IN KENDIG

In *Kendig,* 641 P.2d 1235, this court found a rational relationship between the statute (which provided immunity to co-employees acting with less than culpable negligence) and the classification of immunized co-employees. The *Kendig* objectives, which are reiterated by the majority here, are: (1) harmony among employees; (2) maintenance of a sound compensation fund; and (3) continuance of the overall purpose and philosophy behind the Worker's Compensation Act. The same legislative objectives set forth by this court in *Kendig* are still applicable today. All are viewed in the context of the underlying legislative goal of "saving" the Worker's Compensation program when it underwent revision in 1986. Unfortunately, any realistic factual relevance of those "goals" to what the provision actually does exists somewhere between unrefined imagination and a total *non sequitur.*

Relying on Wyo. Const. art. 10, § 4 and *Markle v. Williamson,* 518 P.2d 621 (Wyo.

injury done to person, reputation or property shall have justice administered without sale, denial or delay."

**6.** I cite with approval *Mattson v. City of Astoria,* 39 Or. 577, 65 P. 1066, 1067 (1901), a case interpreting Or. Const. art. 1, § 10. The clause, which states in part that " 'every man shall have remedy by due course of law for injury done him in person, property, or reputation,' " was dispositive in the court's holding that the constitutional provision guaranteeing a remedy for an injury allowed the legislature to change the remedy, attach conditions precedent to its exercise,

and perhaps to abolish old and substitute new remedies, but it did not allow the legislature to deny a remedy entirely.

**7.** Wyo. Const. art. 3, § 27 states in relevant part:

The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * for limitations of civil actions; * * * [or] granting to any corporation, association or individual, the right to * * * any special or exclusive privilege, immunity or franchise whatever * * *.

1974), appellants contend that a constitutional amendment is required to extend absolute immunity to co-employees. Absent a constitutional amendment, appellants argue that the legislature is precluded from enacting legislation immunizing co-employees for their negligent and/or intentionally tortious acts.

The majority agrees with appellees' response that this court's holding in *Kendig* recognizes legislative authority to immunize co-employees from liability so long as the co-employee allegedly causes an injury while acting within the scope of his employment. Thus, without specifically distinguishing between various types of intentional and negligent conduct, the legislature and the majority of this court provide absolute immunity from liability to all co-employees regardless of whether their conduct is negligent, grossly negligent, culpably negligent, intentionally tortious or abjectly criminal. Before the 1986 revision in W.S. 27–14–104(a), (i.e., when an employee could recover damages from a culpably negligent co-employee; *see Case v. Goss*, 776 P.2d 188 (Wyo.1989); *Wessel*, 752 P.2d 1363; and *Pace v. Hadley*, 742 P.2d 1283 (Wyo.1987)), we imposed a heavy burden on plaintiffs to demonstrate a co-employee's culpable negligence.[8] The line between culpable negligence and intentionally tortious conduct may not be great, but the qualitative distinction between the two is still significant.

Intentionally tortious conduct is "different in kind" from other classifications of negligent behavior and the distinction is not simply a difference in the "degree" of knowledge.

The law of intentional torts constitutes a separate world of legal culpability. It is a system that balances specific rights and obligations, and imposes liability on the basis of a party's intent, rather than the moral blameworthiness of that party's conduct by societal standards. The real qualitative distinctions between intentional torts and other forms of culpable conduct share a single origin—the "duty" concept. Intentional torts are dignitary by nature. They are designed to protect one's right to be free from unpermitted intentional invasions of person or property. Alternatively, the duty underlying an action in negligence or strict products liability is to avoid causing, be it by conduct or by product, an unreasonable risk of harm to others within the range of proximate cause foreseeability. These distinct worlds of culpability cannot be reconciled.[9]

Gallub, *Assessing Culpability in the Law of Torts: A Call for Judicial Scrutiny in Comparing "Culpable Conduct" Under New York's CPLR 1411*, 37 Syracuse L.Rev. 1079, 1112 (1987) (footnotes omitted). Thus, relying on *Kendig* for the proposition that the legislature has authority to abolish co-employee liability for all actions within the scope of employment is misplaced. It is not enough to assume that intentionally tortious co-employees will be held accountable for their misconduct based on a showing that they acted outside the scope of their employment. Rather, it is likely that many intentional tortfeasors will enjoy full immunity from liability.

I believe the legislature and the majority of this court mistakenly blur the qualitative distinction between intentional misconduct and other types of negligent behavior. Ex-

---

8. In *Brebaugh v. Hales*, 788 P.2d 1128, 1136 (Wyo.1990), this court defined "culpable negligence" as

"willful and serious misconduct." The term "willful" means "such as is done purposely, with knowledge—or misconduct of such a character as to evince a reckless disregard of consequences." We distinguish "willful misconduct" from "ordinary negligence" by the aggravating factor of the tort-feasor's state of mind. We require a plaintiff to prove the tort-feasor acted with a state of mind that approaches intent to do harm. Since we ap-

preciate that a plaintiff faces a difficult task in trying to prove the tort-feasor's state of mind, we allow the plaintiff to demonstrate that a tort-feasor has intentionally committed an act of unreasonable character in disregard of a known or obvious risk that is so great as to make it highly probable that harm will follow.

9. Not all commentators accept the "different in kind" distinction. *Cf.* Dear and Zipperstein, *Comparative Fault and Intentional Torts: Doctrinal Barriers and Policy Considerations*, 24 Santa Clara L.Rev. 1 (1984).

tension of the holding in *Kendig* to immunize culpably negligent or intentionally tortious co-employee conduct is an invalid and unjustified violation of constitutionally protected rights within our state's constitution.

While it is arguable that a higher level of scrutiny is mandated by the statutory infringement of constitutionally protected rights at stake in these cases, I find that W.S. 27–14–104(a) fails even the lowest level of scrutiny. *See White,* 784 P.2d at 1332, 1335, Urbigkit, Justice, dissenting and *Hoem v. State,* 756 P.2d 780, 785 (Wyo. 1988), Thomas, Justice, specially concurring, with whom Urbigkit, Justice, joined. The statute is not reasonably related to the legislative objectives. Extending absolute immunity to co-employees does not reduce injuries, promote safety or preserve the economic integrity of the Worker's Compensation fund.

First, it is purely speculative, if not actually spurious, to opine justification for constitutionality on ascertainment of whether or not co-employee immunity creates a more harmonious work environment. I contend that both logic and statistical evidence reveal that a grant of absolute immunity to co-employees serves only to create a less-safe workplace. It follows that a less-safe workplace is, by its very nature, a less-harmonious workplace since employees must be more cautious of their co-workers. Since co-employees are no longer threatened with liability for their culpable negligence or intentionally tortious conduct, they are, unfortunately, more likely to endanger both themselves and their fellow employees in the workplace. This conclusion is supported by employment and work force injury data generated by various state agencies since the 1986 legislative revision of W.S. 27–14–104(a). The data indicates that between 1987 and 1989 there have been approximately twenty-two percent more Worker's Compensation injuries reported by a Wyoming work force with approximately 12,000–15,000 fewer workers in 1988 than there were in 1986. This

is compelling support for the argument that workers and employers are exercising less caution in the workplace in part because they have less incentive to do so. This adverse workplace safety result was clearly illustrated by appendices attached to the amicus curiae brief of the Wyoming AFL–CIO.

This case is illustrative of the analysis of thoughtful scholars and concerned jurors determining why immunities from responsibility for wrongful conduct are characterized as anachronistic and dinosaurs in this modern world in its complex and compressed society. Immunities by providing absolution from responsibility invite, approve and pamper harmful, slothful, malicious and just bad conduct. Protection from misconduct grows and cultivates that approved, invited and justified misconduct. The real quid pro quo from the legislative enactment, taking away rights of the employees, was that the something the worker lost from the immunity foreclosing rights was the doubtful benefit he achieves of exposure to harm, damage, and possible death caused by wrongful conduct.

Similarly, in light of Wyo. Const. art. 1, § 22, Wyo. Const. art. 1, § 34 [10] and this court's decision in *Nehring v. Russell,* 582 P.2d 67 (Wyo.1978), I find an abject flight from fact or logic in the "harmonious workplace" argument provided as justification for these loss of rights for injured workers. A negligently maintained or a culpably inflicted dangerous workplace is seldom found to be inclined to create harmony. Broken bones and dead bodies do not make good music. A more thoughtful thesis is found in *Nehring,* where this court found no rational relation between the state's "guest statute" and ascribed legislative purposes. Consequently, the "guest statute" was declared unconstitutional because, in effect, it eliminated a cause of action (the right of a non-paying passenger to recover for injuries inflicted by ordinary negligence). Comment, *The Constitutionality of Automobile Guest Statutes: A*

**10.** Wyo. Const. art. 1, § 34 states that "[a]ll laws of a general nature shall have a uniform opera- tion."

*Roadmap to the Recent Equal Protection Challenges*, 1975 B.Y.U.L.Rev. 99 (1975).

Second, W.S. 27–14–104(a) eliminates a significant source of reimbursement for the coffers of the Worker's Compensation fund. Under W.S. 27–14–105(a),[11] the Worker's Compensation fund is entitled to reimbursement for payments made to an injured employee covered under the Act (up to one-third of the total proceeds recovered from a third party). Since this source of potential revenue is no longer available under the 1986 amendment to W.S. 27–14–104(a), it is obvious the legislature did not adopt W.S. 27–14–104(a) to protect the financial solvency of the Worker's Compensation fund.

Third, from the outset, Worker's Compensation has always been considered a form of industrial insurance rather than damages. *Hotelling v. Fargo–Western Oil Co.*, 33 Wyo. 240, 238 P. 542 (1925).[12] This court irrefutably established the proposition that Worker's Compensation stems from contract and not from tort. *Kendig*, 641 P.2d 1235; *Markle*, 518 P.2d 621; *Zancanelli v. Central Coal & Coke Co.*, 25 Wyo. 511, 173 P. 981 (1918). "An insurance policy does not protect the policy holder from the consequences of his intentional tortious act. Indeed, it would be against public policy to permit insurance against the intentional tort." *Blankenship v. Cincinnati Milacron Chemicals, Inc.*, 69 Ohio St.2d 608, 433 N.E.2d 572, 577, *cert. denied* 459 U.S. 857, 103 S.Ct. 127, 74 L.Ed.2d 110 (1982). By denying an injured employee the opportunity to recover damages from an intentionally tortious co-employee, the injured employee is forced to bear the brunt of his injuries while the intentionally tortious co-worker escapes liability. I fail to see how the elimination of co-employee liability in tort serves to enhance any public purpose premised on the concepts of insurance and contract.

The only effective legislation to "save" the Worker's Compensation fund would involve imposing greater deterrent measures on the work force—not eliminating viable incentives for safe practices.[13] Absolute immunity creates a less-safe workplace and allows a tortious wrongdoer to escape re-

---

**11.** W.S. 27–14–105(a) states:

> If an employee covered by this act receives an injury under circumstances creating a legal liability in some person other than the employer to pay damages, the employee if engaged in work for his employer at the time of the injury is not deprived of any compensation to which he is entitled under this act. He may also pursue his remedy at law against the third party or the coemployee to the extent permitted by W.S. 27–14–104(a). If the employee recovers from the third party or the coemployee in any manner including judgment, compromise, settlement or release, the state is entitled to be reimbursed for all payments made, or to be made, to or on behalf of the employee under this act but not to exceed one-third (⅓) of the total proceeds of the recovery without regard to the types of damages alleged in the third-party action. All money received by the state under this section shall be credited to the worker's compensation account and considered in computing the employer's experience rating.

**12.** Governor Joseph M. Carey in 1913, as the father of Wyoming's Worker's Compensation constitutional statutory law, enumerated the four important reasons for his recommendations:

> First, to furnish certain prompt and reasonable compensation to the injured employee;

> Second, to utilize for injured employees a large portion of the great amount of money wasted under the present system;

> Third, to provide a tribunal where disputes between employer and employee in regard to compensation may be settled promptly, cheaply and summarily;

> Fourth, to provide a means for minimizing the number of accidents in industrial pursuits.

Governor Joseph M. Carey's Address to the Twelfth Wyoming State Legislature, *supra*, at 40.

**13.** See *Grantham*, 359 So.2d at 788, where the court estimated that the ever-present threat of suit by an injured worker for negligent acts of a co-employee had a deterrent value; immunity would result in workers being less careful on the job. *See, generally*, 81 Am.Jur.2d, *Workmen's Compensation* § 67 (1976); Annotation, *Willful, Wanton, or Reckless Conduct of Coemployee as Ground of Liability Despite Bar of Workers' Compensation Law*, 57 A.L.R.4th 888, 891 § 2 (1987). One law of nature is immutable and as old as "civilization" itself: Economic greed kills and maims. Society exists to limit or ameliorate uncontrolled greed of the individual, group or nation.

sponsibility and to act with impunity.[14] No valid state objective is promoted by such a misguided legislative act.

Legislative extension of absolute immunity to co-employees absent an enabling constitutional amendment is an arbitrary limitation on an injured employee's right to recover damages and is thus in contravention of Wyo. Const. art. 10, § 4. The means employed by the legislature to "save" the Worker's Compensation program are patently unreasonable and fail even the lowest standard of constitutional judicial review.[15]

## VI.

### EVEN WITH *KENDIG*, THIS DECISION IS STILL WRONG

We are first faced here with the consequences of this court's wrong decision in *Kendig*. I would overrule *Kendig* for, as Chief Justice Rose pointed out in his dissent, "it is a holding not supported by the law and in derogation of the limitations on legislative power found in Art. 10, § 4." *Id.* at 1246. *Kendig* should be overturned.

If the majority of this court is unwilling to do so, then the legislature should, or in time a majority of this court will in another day be called to return to the application of basic constitutional protections which should be provided by the Wyoming Constitution and enforced by this tribunal.

Regardless of the semantic manipulations applied by the majority to conclude that a "plain reading of the first sentence of Wyo. Const. art. 10, § 4," when read in conjunction with the whole provision, "does not, * * *, prove that the elimination of co-employee suits is unconstitutional," I strongly feel that the legislature cannot enact a statute that immunizes co-employees regardless of the degree or nature of their culpably negligent or intentionally tortious conduct without first amending Wyo. Const. art. 10, § 4. *See, generally,* Note, *Worker's Compensation—Constitutionality of Wyoming's Co–Employee Immunity Statute Under Article 10, Section 4, of the Wyoming Constitution. Meyer v. Kendig,* 641 P.2d 1235 (Wyo.1982), XVIII Land & Water L.Rev. 355, 369–70 (1983). While Wyo. Const. art. 10, § 4 has been amended on two previous occasions to accommodate Worker's Compensation

---

**14.** Public policy arguments against co-employee immunity for intentionally inflicted injuries were considered in *Newby v. Gerry,* 38 Wash. App. 812, 690 P.2d 603, 607–08 (1984):

Sound public policy demands that an intentional wrongdoer not use the workers' compensation laws as a shelter from liability. A number of courts in other jurisdictions have relied on this rationale in allowing such suits to proceed. * * * Forbidding suit would allow an employee to bludgeon a co-worker with civil impunity, and the injured worker might be required to accept less than full compensation for his injuries. * * *

Moreover, barring suit would remove the deterrent effect of civil liability and damages. As the court noted in *Bryan v. Utah Int'l,* [533 P.2d 892 (Utah, 1975)] *supra* at 894:

"The policy of our law has always been to allow one injured through the intentional act of another, to seek redress from the one intending harm. That policy has the salutary effect of deterring intentional injury. It would serve no social purpose to allow an employee to intentionally injure another employee engaged in the same employment, then use an otherwise socially beneficial, remedial, statute as a shield for such wrongdoing.

**15.** Two recent Utah Statute of Repose cases in a nature similar to this court's decision in *Phillips,* 611 P.2d 821 demonstrates how far this court has strayed and how result-oriented this case becomes in constitutional protection and rights denigration terms. *Horton v. Goldminer's Daughter,* 785 P.2d 1087 (Utah 1989) and *Sun Valley Water Beds of Utah, Inc. v. Herm Hughes & Son, Inc.,* 782 P.2d 188 (Utah 1989) analyzed constitutional concepts when a statute, through a statute of repose, denied plaintiff's common law rights and remedies. In the two exhaustive opinions, the Utah court found legislative evisceration of an injured party's rights to be constitutionally foreclosed by legislative failure to provide a fair substitute remedy, an arbitrary and capricious and unreasonable means employed to achieve a questioned objective. Constitutional protection of equal protection, due process and open court was tested and the statute was found wanting in validity. Here, like there, the open court provision of Wyo. Const. art. 1, § 8 is clearly violated. A substitute remedy of equal value is clearly not provided and the right which has existed for centuries to recover for harm done becomes unavailable with denied remedy.

legislation,[16] no constitutional amendment has been enacted to allow the legislature to extend absolute immunity to co-employees and, consequently, to circumvent the clear language and intent of both the first sentence and the entire provision of Wyo. Const. art. 10, § 4. The legislature had the opportunity to "constitutionalize" extension of absolute immunity to co-employees when it submitted Wyo. Const. art. 10, § 4 to the voters in 1986. The legislature did not take advantage of this opportunity and I find no authority under which the legislature may unilaterally grant such immunity.

Even though *Kendig* was wrongly decided and is again upheld against the Wyoming Constitution by this court, in consideration of that present state of Wyoming law, I would further argue that *Kendig* is also distinguishable from the present case. As a further step beyond where this court had previously gone, *Kendig* does not mandate legislative authority to extend absolute immunity to co-employees in the absence of an authenticating constitutional amendment or elimination of the beneficial amendments presently existent. Although that earlier case might be excused constitu-

tionally under the specific terminology of Wyo. Const. art. 10, § 4, this case simply and directly cannot.[17]

*Kendig* held that co-employee immunity for acts of ordinary negligence was constitutional. However, in 1986, the legislature went far beyond the result in *Kendig* to eliminate culpable negligence or intentionally tortious acts from W.S. 27–14–104(a). While I struggle philosophically with the concept of granting immunity for any degree of negligence, I am willing to assume, *arguendo*, that immunity for acts of ordinary negligence may be justified. Ordinary negligence connotes acts of unconscious inadvertence, and allowing injured employees to sue co-workers for such "accidental" acts would not significantly reduce workplace injuries. Total basic rights are not squashed by the earlier legislation and the *Kendig* reasoning since only the standard for recovery was adjusted in the enactment.

The same cannot be said for intentional acts of co-employees, supervisors and bosses where the totality of any responsibility for conduct or rights of justice to the injured are identically eliminated. Extending immunity to intentional tortfeasors re-

---

16. In *Markle*, 518 P.2d at 625, this court recognized that a constitutional amendment was necessary in order to eliminate a cause of action against an employer when the original Worker's Compensation Act was passed in 1914. We stated:

> When Wyoming reached the time that it needed a workmen's compensation law, there was an obstacle. * * *
>
> * * * * * *
>
> Hence, if the contemplated law was to provide for limited compensation benefits and make those benefits sole and exclusive remedies, an amendment to Art. 10, § 4, was necessary. Therefore, the legislature proposed and the voters ratified the 1914 amendment. * * *
>
> * * * It is entirely clear, however, that nothing was changed with respect to a fellow employee. The amendment being in 1914 when industrial suits were quite infrequent, it would appear the situation with respect to co-workers was not dealt with. The result is that common-law rights (such as the right of a worker to sue a fellow employee) remained unchanged; and that right continues to this time.

*Id.* at 625.

Similarly, in 1986 when the legislature sought to allow non-extrahazardous employers the option of participating in the Act, Wyo. Const. art. 10, § 4 (1986 amend.) was again amended to add the last two sentences which read:

> Subject to conditions specified by law, the legislature may allow employments not designated extrahazardous to be covered by the state fund at the option of the employer. To the extent an employer elects to be covered by the state fund and contributes to the fund as required by law, the employer shall enjoy the same immunity as provided for extrahazardous employments.

17. Under the provisions of Wyo. Const. art. 10, § 4, the employee loses his rights to benefits when the injury is "due solely to the culpable negligence of the injured employee." Consequently, as the structure of the law is now approved by the majority, the employee has no rights to benefits if *that employee* is guilty of culpable negligence, but even so, *that employee* has no general rights of injury recovery when culpable negligence is committed against him by fellow workers or administrative personnel of the employer. Again, the quid pro quo is a right to receive nothing as a price of giving up everything.

moves liability from the shoulders of the responsible party and eviscerates all deterrent effect against future misconduct. "It would be a travesty of justice and logic to permit a worker to injure a co-employee through such conduct, and then compel the injured co-employee to accept moderate benefits under the Act." *Pleasant v. Johnson*, 312 N.C. 710, 325 S.E.2d 244, 250 (1985). An employee should not be required to contemplate the risk of an intentional tort as a natural risk of employment. *Blankenship*, 433 N.E.2d at 576. Not only should this court's majority but also the membership of the Wyoming legislature be called to re-examine rights of the worker for redress when injured by culpable, criminal or willful misconduct effectuated against him by any one whose "employee status" creates the danger and causes the resulting harm.

Legislation which arbitrarily abolishes an entire cause of action and eliminates rights to redress for injury violates several constitutional guarantees.[18] The legislature cannot actively or inactively "amend" the constitution by legislative action or inaction. As one court aptly observed, " '[s]ociety cannot escape its responsibility to provide justice by simply eliminating the rights of its citizens.' " *Carson v. Maurer*, 120 N.H. 925, 424 A.2d 825, 838 (1980) (quoting

*Opinion of the Justices*, 113 N.H. 205, 215, 304 A.2d 881, 888 (1973), Duncan and Grimes, Justices, dissenting).

Former Chief Justice Robert R. Rose, Jr., who was principal counsel for the worker in *Markle*, 518 P.2d 621, came on this court and dissented in *Kendig* and now appears as appellate counsel in the present companion case of *Rodabaugh v. Ross*, 807 P.2d 380 (Wyo.1991). In *Rodabaugh*, Chief Justice Rose provides his wisdom and dedication to justice by effective analysis in his appellate brief:

At common law, there was no prohibition against suit by one employee against a co-employee. This seed issue was resolved in *Markle v. Williamson*, [518 P.2d 621 (Wyo.1974) ], where it was urged by the employer that one employee could not sue a co-employee in tort and that, in any case, the immunity of the employer inured to the benefit of its co-employee. In holding that the co-employee enjoyed no such immunity and that co-employees were possessed of rights of action against one another, the court said:

"[1] There is a pervading rule that valuable common law rights shall not be deemed destroyed by a statute except by clear language. See *Bosel v.*

---

**18.** The specially concurring opinion relies on the Wyoming legislature's adoption of the "Heart Balm" statutes, W.S. 1–23–101 through 1–23–104, enacted in 1941, for the proposition that the legislature can create or eliminate causes of action. Justice Cardine concludes, "The constitutional power of the legislature to abolish this cause of action is so clear, it has never been questioned."

I disagree both as to the power of the legislature and as to "unquestioned clarity" of the premise. While he is correct that the constitutionality of the "Heart Balm" statutes has not been litigated, and while the constitutionality of legislation is presumed unless affirmatively shown to be otherwise, there is no justification for the resulting conclusion that the absence of a constitutional challenge in that instance and in a completely different context supports the proposition that the legislature has the authority to abolish a cause of action in contravention of explicit language in the Wyoming Constitution. *See* Wyo. Const. art. 10, § 4 and *Stephenson v. Mitchell ex rel. Workmen's Compensation Dept.*, 569 P.2d 95 (Wyo.1977). The "Heart Balm" statutes were enacted to alleviate the effects of

vexatious litigation, fraud and collusion. *See* Note, *"Heart Balm" Legislation and the Constitution*, 1 Wyo.L.J. 75, 81 (1947). There is nothing to suggest that the same or similar factors motivated the Wyoming legislature in 1986 to extend absolute immunity to co-employees under Wyoming's Worker's Compensation Act; rather, the legislature acted in response to the perceived threat of insolvency of the compensation fund.

The legislative reasoning cited by Justice Cardine to the effect that it is the public policy of Wyoming that the " 'best interests of the people of the state will be served by the abolition of [the "Heart Balm"] remedies' " is distinguishable and, in fact, provides compelling argument in favor of *reversal* in the case now before this court. The interests of the people of Wyoming, and particularly all employees covered by Worker's Compensation, would be best served if co-employee immunity is abolished and intentionally tortious or culpably negligent wrongdoers are held responsible for their misconduct. Co-employee immunity discourages safety in the workplace and serves only to protect those who deserve no protection.

*State*, Alaska, 398 P.2d 651, 654; *Saala v. McFarland*, 63 Cal.2d 124, 45 Cal.Rptr. 144, 403 P.2d 400, 404; *Industrial Indemnity Co. v. Columbia Basin Steel & Iron Inc.*, 93 Idaho 719, 471 P.2d 574, 548; *Valdez v. State*, 83 N.M. 720, 47 [497] P.2d 231, 133 [sic], aff'd. [83 N.M. 741], 497 P.2d 743; *Smith v. United Properties, Inc.*, 2 Ohio St.2d 310, 209 N.E.2d 142, 144; and *Southern Railway Company v. Maples*, 201 Tenn. 85, 296 S.W.2d 870, 783 [sic].

"[2] We find nothing in ... the 1914 constitutional amendment ... which expressly says that a co-employee shall be immune from suit. Having said the employer shall be immune, the legislature surely would have used similar language to say co-employees were immune—if it had so intended.

"The general rule seems to be that where there is no expressed legislative mandate to the contrary, a co-employee or fellow servant is a third party tortfeasor within the meaning of a workmen's compensation act like ours. Annotation 21 A.L.R.3d, § 3, p. 850; 2 Larson's Workmen's Compensation Law, §§ 72 and 72.10, p. 174; 58 Am. Jur., Workmen's Compensation, § 61, p. 617; 101 C.J.S. Workmen's Compensation, § 985(e), p. 481."

*Id.*, at 623.

Following *Markle, supra*, the legislature undertook to amend the statutes to adjust the degrees of negligence that would need to be proved against co-employees before recovery could be accomplished. These amendments were upheld as not violating Article 10, § 4 of the Wyoming Constitution. The court held that, for the legislature to adjust the *degree of proof* from ordinary negligence to gross negligence to culpable negligence, was not to enact laws "limiting the amount of damages...." Art. 10, § 4, *supra*. In other words, the damages against co-employees always remained recoverable, provided the degrees of negligence and culpability established by the legislature were satisfied in the proof process. In *Meyer v. Kendig*, 641 P.2d 1235 (Wyo.1982), the court held that

§ 27–12–103(a) granting immunity to all employees but the culpably negligent "does not limit the amount of damages to be recovered. *It limits the cause of action available for recovery.*" (See p. 1239).

The effect of this opinion is to establish that the first sentence places limitations upon causes of action, which the legislature has the power to do, providing the cause of action itself is preserved. The reasoning behind the holding seems corroborative of this conclusion where the court, in *Kendig, supra*, goes on to say that if the first sentence of Art. 10, § 4 of the Constitution were to be held to provide that the legislature did not have limitation powers to fix degrees of proof in causes of action involving injury and death, then it would also be without the authority to legislate in such areas as "comparable negligence, statutes of limitation, contribution among joint tortfeasors, etc." (see p. 1239).

By observing that the legislature was indeed possessed with the power of adjustment in these areas, the court was not, of course, saying that the legislature would have the ultimate authority to use them to eradicate causes of action by, for example, adjusting statute of limitations timeframes down to zero, or adjusting comparable negligence statutes in such a burdensome way as to prevent parties from bringing tort actions under any circumstances.

Again, in its *Kendig* opinion, the court reiterates the proposition which holds that the statute under consideration was not violate of Art. 10, § 4, *supra*, because it only sets a standard of proof which must be followed where one employee asserts his or her cause of action against a co-employee. In this context, the court was considering plaintiff's contention that Art. 1, § 8 was being abridged by reason of the legislature's adjustment of the degree of negligence in W.S.1977, § 27–12–103(a). In response to this contention, the court said:

"Section 27–12–103(a) only sets a standard to be applied by the courts in an action by an employee against a co-employee for negligence resulting in a work-related injury. Such is not violative of Art. 1, § 8 of the Wyoming Constitution."

*Kendig, supra,* at 1241.

Therefore, it seems clear that when the court looked at the legislature's fixing of a degree of negligence or culpability proof, the court was simply fixing a standard of proof as between the parties, but it wasn't even intimating that this kind of authority extended to the legislature's ability to do away with the cause of action altogether. In fact, the court in *Kendig* used a comparison between the first and second sentences of Art. 10, § 4 of the Constitution to fortify its view when it observed that the second sentence spoke to "right to recover damages," which the court interpreted to mean no contract whatever could be entered into which would inhibit common-law rights of action, while the first sentence spoke to the legislature's inability to enact legislation "limiting the amount of damages" as being language which, while not permitting the doing away with a right to recover damages, did permit adjustment and control of the degrees of negligence. In this regard, the court said:

"[4] Appellee argues that the first sentence of Art. 10, § 4, Wyoming Constitution, prohibits the legislature from granting immunity to co-employees for negligence, regardless of degree. She acknowledges the propriety of immunity granted to employers because of the subsequent language in Art. 10, § 4 of the Wyoming Constitution. Such first sentence states that 'no law shall be enacted limiting the *amount of damages* to be recovered * * *' (emphasis added). *Section 27–12–103(a) does not limit the amount of damages to be recovered. It limits the cause of action available for a recovery.* The fact that the first sentence of Art. 10, § 4 relates only to the amount of damages is exemplified by

the second sentence which pertains to the 'right to recover.' A 'limitation in amount' and a 'right to recovery' were regarded as separate issues and treated separately by the framers of the Wyoming Constitution. See Journal and Debate of the Constitutional Convention of the State of Wyoming, pp. 443–454 and 614–616 (1889). The plain language of such first sentence and its ordinary meaning reflects its prohibition to be against laws limiting the 'amount of damages.' Section 27–12–103(a) does not do that." (Emphasis [Rose].)

*Kendig, supra,* at 1239.

(Emphasis in original and footnote omitted.) With accuracy, the author concluded:

We conclude this argument by allowing that *Kendig* does not address the constitutionality of a statute granting immunity to a co-employee in a worker's compensation case. It only holds that a worker's compensation statute which adjusts the degree of negligence or culpability which must be met in actions between co-employees is not in violation of Article 10, § 4 of the Wyoming Constitution. We further urge that, since the legislature felt impelled to submit the Worker's Compensation Amendment for adoption before enacting worker's compensation statutes in the nature of industrial accident insurance, so that the first sentence of Article 10, § 4 would not be violated, it follows that a statute doing away with the common-law co-employee cause of action altogether must also fail in the face of the "limiting the amount of damages" language of the first sentence of Article 10, § 4, *supra.*

## VII.

## CONCLUSION

An employee injured at the hands of his criminal, culpably negligent or intentionally tortious co-employee constitutionally should be given an opportunity to recover damages for his physical harm. Because W.S. 27–14–104(a) clearly violates protected rights within the Wyoming Constitution, I

dissent in anguish for this compulsion exclusion of justice and near intentional invitation for death or serious injury to stand at the shoulder of employees who are engaged in service in the extrahazardous Wyoming work places.[19]

---

**19.** The front page headlines in the Sunday, March 3, 1991 Casper Star–Tribune, Wyoming's statewide newspaper states: "Workplace safety poor in Wyo—Job-related death, injury rate second worst in U.S." The story describes Wyoming as the second worst, better only than Alaska and about fifty percent *higher* than Montana which, with similar job characteristics, ranked third. Idaho, in fourth place, had only fifty percent of the number of fatalities per average number of workers. National statistics provided by the story by the National Institute for Occupational Health and Safety revealed deaths per 100,000 workers in a six year period were Alaska, 34.2; Wyoming, 32.5; Montana, 22.6; and Idaho, 18.6. Forty-five states had job-related deaths less than half of Wyoming. It can be statutorily said that we in Wyoming legislate and adjudicate to accept death and injury in the work place.