SMITH, ADMR., APPELLEE, *v.* UNITED PROPERTIES, INC., APPELLANT. SCHILLIGER, APPELLEE, v. GRACELAND SHOPPERS MART, INC.,

(Nos. 38780 and 38781—Decided June 23, 1965.)

*Mr. John Wile* and *Mr. Curtis H. Porter,* for appellee in case No. 38780.

312

*Mr. Paul L. Thompson* and *Mr. Dominic A. Trianfo*, for appellee in case No. 38781.

*Mr. Joseph M. Thatcher*, for appellants.

HERBERT, J. Since these cases present the same question of law, they will be consolidated for the purposes of this opinion and will be referred to in the singular.

The question presented here may be stated in this language:

Does the rule of liability applicable to a municipality as provided in Section 723.01, Revised Code, apply also to the liability of an owner of a shopping center to its invitees?

The statutory law and the common law perform separate functions in the continuous development of our system of jurisprudence.

Section 723.01 of the Revised Code provides:

"Municipal corporations shall have special power to regulate the use of the streets. The legislative authority of such municipal corporation shall have the care, supervision, and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and shall cause them to be kept open, in repair, and free from nuisance."

Section 723.01 of the Revised Code is a grant of special power to the legislative authority of a municipal corporation by the General Assembly to regulate the use of the streets of a municipality. The principles of the common law, on the other hand, have been created and developed by the judicial branch of government and have been woven into our system of jurisprudence in the courtrooms not only in our country but far back in English judicial history.

The function of the common-law is well described in 9 Ohio Jurisprudence 2d 556, Section 6, in this language:

"The beauty and beneficence of the common-law is its flexibility. It grows from day to day. The courts in applying common-law principles must expand these principles to meet new problems arising from the growth and development of society. The boast of our common-law system is that its flexibility permits its ready adaptability to the changing nature of human affairs, so that whenever, either by the growth or

development of society or by the statutory change of the legal status of any individual, he is brought within the principles of the common-law, then it will afford him the same relief that it has theretofore afforded to others coming within the reason of its rules.''

Abrogation of the common law by implication is not permitted. 9 Ohio Jurisprudence 2d 558, Section 7, reads:

''An intention of the General Assembly to abrogate common-law rules must be manifested by *express language*; there is no abrogation of the common law by mere implication.'' (Emphasis added.) See, also, *Blythe* v. *Vail* (C. P.), 26 Ohio Law Abs., 516.

From the foregoing principles, it appears to be quite well established that the General Assembly has the power to abrogate or modify the principles of the common law and the exercise of that power must be manifested by express language.

The statute—Section 723.01, Revised Code—imposes a duty upon a municipality to provide that its streets and other facilities mentioned ''be kept open, in repair, and free from nuisance.'' The statute deals solely with a problem of a municipality. It makes no mention whatsoever as to obligations growing out of the relationship between a storekeeper or a shopping-center owner and invitees. It necessarily follows that the General Assembly did not intend to abrogate or modify any common-law principles with respect to these obligations.

It is conceded that the plaintiff in the instant case was a business invitee of the defendant, and that the defendant owed her the common-law duty to exercise ordinary care. *Beaney* v. *Carlson* (1963), 174 Ohio St. 409; *Englehardt* v. *Philipps* (1939), 136 Ohio St. 73; annotation, 95 A. L. R. 2d 1341. The common-law duty of ordinary care is that degree of care which an ordinarily reasonable and prudent person exercises, or is accustomed to exercise, under the same or similar circumstances. See 39 Ohio Jurisprudence 2d 505, Negligence, Section 17, and authorities cited in footnote 11.

Defendant relies upon the holdings in *Kimball* v. *City of Cincinnati*, 160 Ohio St. 370; *O'Brien* v. *City of Toledo*, 167 Ohio St. 35; *Gallagher* v. *City of Toledo*, 168 Ohio St. 508. Those three cases deal with a duty imposed upon a city *by* statute, not

a duty imposed by the *common law*. The syllabus in *Kimball* is:

"A variation of from one-half to three-fourths of an inch in the height of adjacent sections of a sidewalk is a slight defect commonly found in sidewalks, and *the municipality* in which such sidewalk is located is not guilty of a violation of the duties imposed upon it by Section 3714, General Code, by reason of the existence of such defect." (Emphasis added.) (Section 3714, General Code, is now Section 723.01, Revised Code.)

In the statement of the case in *Kimball*, plaintiff, an elderly woman, "was walking along Race Street in the downtown portion of Cincinnati looking into store windows as she passed. *It was a bright clear day.* She was alone and there were few persons on the sidewalk. She was carrying no packages except her purse." (Emphasis added.)

In *O'Brien*, the plaintiff "was familiar" with the street, "having used it many times." There was a crack in the cement sidewalk one and one-half to one and three-fourths inches wide. She claimed that she fell and was injured.

In *Gallagher*, "at the place of the accident the sidewalk was intersected by a driveway leading from a parking lot surfaced with loose gravel or stones. Particles of loose stone surface were carried onto the sidewalk by automobiles being driven from the parking lot." The driveway "was made uneven, slippery and hazardous for pedestrian use by reason of the deposit and accumulation of said stones. * * * the accident occurred between 7:30 and 8 o'clock on a clear morning with good visibility." One slab of the sidewalk had dropped about one and one-half inches below the adjoining block. Plaintiff alleged that she stepped from the upper to the lower slab and "on the stones which threw her off balance, causing her to fall."

In those three cases, all the evidence was before the trial courts as well as the appellate courts. In the instant case, the sustaining of the demurrer did not permit the consideration of any evidence.

It may be well to observe also that Section 723.01 of the Revised Code, being in derogation of the common law, is strictly construed in favor of the city. Such a rule does not apply in

the case at bar. We have no quarrel with the decisions in the above three cases. The questions in those cases grew from a duty imposed by statute upon a municipality. Here the court is required to construe the common law in the light of all surrounding circumstances.

In *Griffin* v. *City of Cincinnati*, 162 Ohio St. 232, a case involving municipal sidewalks, at page 235, is the following from the opinion:

"An abrupt raise in a sidewalk does not of itself constitute negligence on the part of the municipality." That is the holding in *Kimball, O'Brien* and *Gallagher*. The defect or abrupt raise in the sidewalk was the sole question in those cases. However, *Griffin* continues:

"All the attendant circumstances should be taken into consideration, and whether a sidewalk is reasonably safe or dangerous for travel *does not depend alone upon the matter of elevation or depression.* The locality, the amount of use and travel, the condition of the sidewalk as a whole, whether it is in a business or residence neighborhood, and whether it is in a solidly or sparsely built up section are all circumstances which must be taken into consideration in addition to an elevation or depression. * * *" (Emphasis added.)

Of course there are sparsely settled areas within a municipality and also long stretches of sidewalk where pedestrian traffic is light. In a shopping center the sidewalk, at certain times, is densely crowded with people bent on shopping. That condition would necessarily require of the defendant owner a greater degree of care to protect invitees because the danger to them by reason of a defective sidewalk in a crowded concourse would be increased.

The court below did not have the evidence upon which to apply the common-law rule of liability of a shopping center to an invitee. In a dense crowd, especially during evening shopping hours, it is practically impossible for a pedestrian to see the sidewalk in front of him. Furthermore an invitee may be carrying packages or parcels. There may be distractions in a show-window display to attract the attention of the invitee. These and all other facts and circumstances must be assessed

to determine the danger in which the invitee may be placed, in order that the proper degree of care may be imposed upon the shopping center owner.

For the reasons herein set out, the judgments of the Court of Appeals are affirmed.

*Judgments affirmed.*

CORRIGAN, SCHNEIDER and BROWN, JJ., concur.

TAFT, C. J., MATTHIAS and O'NEILL, JJ., dissent.

CORRIGAN, J., of the Eighth Appellate District, sitting for ZIMMERMAN, J.

TAFT, C. J., dissenting. I could concur in the syllabus but I must dissent from the judgment.

In order to recover from the occupier of premises for personal injuries sustained in a fall claimed to have been caused by the condition of those premises, a business invitee must allege and prove that the fall was proximately caused by some unreasonably dangerous condition of the premises.

As stated in 2 Harper and James on Torts 1489 *et seq.*, Section 27.13:

"People can hurt themselves on almost any condition of the premises. That is certainly true of an ordinary flight of stairs. But it takes more than this to make a condition *unreasonably* dangerous. If people who are likely to encounter a condition may be expected to take perfectly good care of themselves without further precautions, then the condition is not unreasonably dangerous because the likelihood of harm is slight. This is true of the flight of ordinary stairs in a usual place in the daylight. It is also true of ordinary curbing along a sidewalk, doors or windows in a house, counters in a store, stones and slopes in a New England field, and countless other things which are common in our everyday experience. It may also be true of less common and obvious conditions which lurk in a place where visitors would expect to find such dangers. The ordinary person can use or encounter all of these things safely if he is fully aware of their presence at the time. And if they have no unusual features and are in a place where he would naturally look for them, he may be expected to take care of himself if they are

plainly visible. In such cases it is enough if the condition is obvious or is made obvious (e. g., by illumination). The knowledge of the condition removes the sting of unreasonableness from any danger that lies in it, and obviousness may be relied on to supply knowledge. Hence, the obvious character of the condition is incompatible with negligence in maintaining it. If plaintiff happens to be hurt by the condition, he is barred from recovery by lack of defendant's negligence towards him, no matter how careful plaintiff himself may have been.''

The question as to whether the condition of premises complained of is an unreasonably dangerous condition is usually a question of fact for determination by the jury or other trier of the facts. However, where reasonable minds cannot determine that such condition was unreasonably dangerous, the trial court should not permit a jury to determine that it was. This court has so held in numerous cases in actions by business invitees against occupiers of premises for personal injuries proximately caused by defects in or hazardous conditions of their premises. See for example *S. S. Kresge Co.* v. *Fader* (1927), 116 Ohio St. 718, 158 N. E. 174 (water blown or carried into store and causing floor to be slippery); *J. C. Penney Co., Inc.,* v. *Robison* (1934), 128 Ohio St. 626, 193 N. E. 401, 100 A. L. R. 705 (floor slippery from oiling by invitor); *Cleveland Athletic Association Co.* v. *Bending* (1934), 129 Ohio St. 152, 194 N. E. 6 (marble floor worn down from long use); *Englehardt* v. *Philipps* (1939), 136 Ohio St. 73, 23 N. E. 2d 829 (diving platform provided for eleven-year-old business invitee slippery because wet from rain and because not covered by matting or abrasive substance); *Boles* v. *Montgomery Ward & Co.* (1950), 153 Ohio St. 381, 92 N. E. 2d 9 (floor made slippery by water and slush tracked onto floor oiled by invitor); *Parras* v. *Standard Oil Co.* (1953), 160 Ohio St. 315, 116 N. E. 2d 300 (grease or oil on floor of lubratorium); *Anaple* v. *Standard Oil Co.* (1955), 162 Ohio St. 537, 124 N. E. 2d 128 (grease or oil on floor of lubratorium); *Kinman* v. *R. K. O. Cincinnati Midwest Corp.* (1960), 171 Ohio St. 72, 168 N. E. 2d 145 (foot caught in worn carpeting).

In *Kresge Co.* v. *Fader, supra* (116 Ohio St. 718), the syllabus reads in part:

''Owners or lessees of stores owe a duty to the patrons of

the store to exercise ordinary care to prevent accident and injury to the patrons while in the store, but they are not insurers against all accidents and injuries to such patrons while in the store.''

In *Boles* v. *Montgomery Ward & Co., supra* (153 Ohio St. 381), the syllabus reads in part:

''The owner or operator of a store who invites the public into his premises to transact business is not an insurer of their safety, but owes the duty to exercise ordinary care to maintain his premises in a *reasonably safe condition* for the protection of such invitees.'' (Emphasis added.)

In *Penney Co.* v. *Robison, supra* (128 Ohio St. 626), the syllabus reads in part:

''1. A storekeeper owes to a customer, shopping in his store, the duty to exercise ordinary care to have and keep his storeroom in a *reasonably safe condition.*

'' * * *

''6. Under our law it is just as pernicious to submit a case to a jury and permit the jury to speculate with the rights of citizens when no question for the jury is involved, as to deny to a citizen his trial by jury when he has the right.'' (Emphasis added.)

In a number of cases, this court has held that there could as a matter of law be no recovery against a municipality for a condition in a sidewalk which involved a much greater potential hazard than the hazard involved in the sidewalk in either of the instant cases. It is contended that those cases are not applicable because the statutory duty imposed upon a municipal corporation with respect to its sidewalks is not the same as the common-law duty imposed upon a storekeeper as to business invitees on his premises. However, our decisions indicate that the common-law duty with respect to business invitees on premises is only to maintain them in a ''reasonably safe condition.'' *Penney* v. *Robison, supra* (128 Ohio St. 626) (syllabus paragraph one); *Boles* v. *Montgomery Ward & Co., supra* (153 Ohio St. 381) (syllabus paragraph one). Likewise, we have consistently held that the duty of a municipal corporation with respect to its sidewalks is only to maintain them in a ''reasonably safe condition.'' *Taylor* v. *Cincinnati* (1944), 143 Ohio St. 426, 55 N. E. 2d 724, 155 A. L. R. 44 (paragraph five of syllabus);

*Drake* v. *East Cleveland* (1920), 101 Ohio St. 111, 127 N. E. 469 (paragraph one of syllabus); *Gibbs* v. *Gerard* (1913), 88 Ohio St. 34, 102 N. E. 299 (paragraph one of syllabus); *Dayton* v. *Glaser* (1907), 76 Ohio St. 471, 81 N. E. 991, 12 L. R. A. (N. S.) 916 (syllabus); *Troy* v. *Brady* (1902), 67 Ohio St. 65, 65 N. E. 616 (syllabus). Hence, holdings that city sidewalks having certain claimed defects were as a matter of law in "a reasonably safe condition" should be helpful in determining whether sidewalks of a private owner that were to be used by his business invitees and which had less hazardous claimed defects were, as a matter of law, in a "reasonably safe condition." *Jones* v. *Great Atlantic & Pacific Tea Co.* (App. Div. 1939), 9 N. Y. S. 2d 81.

In *Kimball* v. *Cincinnati* (1953), 160 Ohio St. 370, 116 N. E. 2d 708, the syllabus reads:

"A variation of from one-half to three-fourths of an inch in the height of adjacent sections of a sidewalk is a slight defect commonly found in sidewalks, and the municipality in which such sidewalk is located is not guilty of a violation of the duties imposed upon it by Section 3714, General Code, by reason of the existence of such defect."

On page 373 *et seq.* of the opinion by Middleton, J., it is said:

"If, as previously held by this court, the city is not an insurer of the safety of sidewalks, there must be some variation in height of sections of sidewalks because of which, as a matter of law, the city can not be charged with negligence. If this is not true, the statement that the city is not an insurer is practically meaningless. That variation in height of sections of sidewalk is a condition existing in practically all parts of every city is universally known. In that connection we quote with approval the following statement contained in the opinion of Hiscock, J., in *Gastel* v. *City of New York*, 194 N. Y. 15, 86 N. E. 833, 128 Am. St. Rep. 540 (in that case the variation in height was from three-eighths to one and three-fourths inches):

" 'We think we may take judicial notice of the fact which ordinary observation discloses that there is scarcely a rod in the streets of any city in which there may not be discovered some little unevenness or irregularity in sidewalks, crosswalks, curbs, or pavements. As the result of various causes, climatic

and otherwise, they are constantly occurring and recurring. Ordinarily they cause no difficulties, and it would require a vast expenditure of money to remove them all. * * * We think that we should be disregarding those principles of liability which are justified by reason and public policy if we should permit a recovery.' "

See, also, *O'Brien* v. *Toledo* (1957), 167 Ohio St. 35, 146 N. E. 2d 122 (crack between two slabs of concrete five feet long and about one and one-half to one and three-quarters inches wide and difference in elevation of slabs along crack from three-eighths inches to one-half inch). *Gallagher* v. *Toledo* (1959), 168 Ohio St. 508, 156 N. E. 2d 466 (slab one and one-half to two inches below adjoining slab), in which a majority of this court disapproved *Griffin* v. *Cincinnati*, 162 Ohio St. 232, to the extent "inconsistent with" the *O'Brien* and *Kimble* cases; *Buckley* v. *Portsmouth* (1959), 168 Ohio St. 513, 156 N. E. 2d 468 (manhole or sewer-catch-basin cover projecting approximately two inches above level of sidewalk).

It has been argued that this court should not approve the sustaining of a demurrer to the petition because the evidence at the trial might disclose facts or circumstances which would justify reasonable minds in finding that the condition described in the petition represented an unreasonably dangerous condition.

However, if there are such facts, they should have been alleged. Thus, Section 2309.04, Revised Code, states that "* * * the petition by the plaintiff * * * must contain * * * a statement of facts constituting a cause of action in ordinary and concise language." If it does not, the petition is demurrable (Section 2309.08, Revised Code). Furthermore, Section 2323.18, Revised Code, states that "when, upon the statements in the pleadings * * * one party is entitled by law to judgment in his favor, upon motion of such party * * * judgment shall be so rendered by the court although * * * a verdict has been rendered against such party and a judgment entered thereon * * *." This clearly indicates that, if plaintiff has failed to do what the statute requires him to do (*i. e.*, state in his petition facts constituting a cause of action), judgment should be rendered against him. This court so held as specifically indicated by the report of its decision in *Kindle* v. *Akron* (1959), 169 Ohio St. 373,

159 N. E. 2d 764, in which all seven members of this court concurred. It is there stated:

"The only defect alleged in the petition is that one slab of the concrete sidewalk projected above the adjoining slabs a distance of one and one-half inches * * *

"The jury returned a verdict in favor of the plaintiff.

"Defendant's motion for judgment *non obstante veredicto* was overruled, and judgment was entered on the verdict.

"The Court of Appeals affirmed the judgment * * *

"*Per Curiam.* There is no bill of exceptions properly before this court, nor was there one properly before the Court of Appeals. Under our recent decisions, however, the petition fails to allege a defect in the sidewalk of such a substantial nature as to justify the imposing of liability on the defendant city * * *

"One of defendant's assignments of error in the Court of Appeals, and also in this court, is that the trial court erred in overruling the motion of defendant for judgment notwithstanding the verdict. On the record before the court, that motion should have been sustained.

"* * * final judgment is rendered for defendant."

See, also, *Bickel* v. *American Can Co.* (1950), 154 Ohio St. 380, 96 N. E. 2d 4 (where this court approved sustaining demurrer to petition which alleged plaintiff's automobile hit defendant's automobile from rear but did not allege facts that would excuse plaintiff from failure to stop within assured clear distance ahead).

In case No. 38781, the third amended petition to which the demurrer was sustained specifies that the so-called "dangerous, defective and unsafe condition consisted of one portion of the sidewalk being approximately one-half (½) inch above the adjoining portion." In case No. 38780, the petition to which the demurrer was sustained specifies that "the part where the deceased caught her foot and fell was located at an expansion joint in said sidewalk wherein" one "sidewalk block * * * had settled to a depth of approximately three-quarters of an inch lower than the sidewalk block on the" other "side of said expansion joint." In neither case are any other facts alleged which might support a reasonable conclusion that the condition described would represent an unreasonably dangerous condition.

I doubt whether there are very many sidewalks in any

better condition than the portions of the sidewalk claimed to have caused the falls in the instant cases. No one can reasonably expect sidewalks to be in any better condition. The law should not go to the extreme of enabling a jury to impose upon an occupier of premises the duty to incur the substantial expense that would be required to repair sidewalks so as to eliminate such trivial departures from perfection.

MATTHIAS and O'NEILL, JJ., concur in the foregoing dissenting opinion.