OPINION
{¶ 1} This matter is before this court upon the appeal of Joseph D. Murphy, appellant, from the decision and judgment entry of the Ohio Court of Claims, which ruled in favor of appellee, the Ohio Department of Rehabilitation and Correction ("ODRC") on the issue of liability. Appellant had filed a lawsuit against ODRC alleging that ODRC was negligent in allowing the September 5, 1997 riot in death row pod No. 4 ("DR-4") to take place and that he received inadequate medical treatment from the staff at the Mansfield Correctional Institution ("ManCI") following the riot.
{¶ 2} Appellant sets forth the following assignments of error on appeal:
{¶ 3} "[1.] The court rendered a decision in favor of defendant concerning its liability that was against the manifest weight of the evidence.
{¶ 4} "[2.] The Court's conclusions of law were incorrect to the extent that they were intermingled with erroneous findings of fact, as hereinafter set forth.
{¶ 5} "[3.] The court erred in sustaining objections to certain questions asked by Plaintiff's counsel of Priscilla Rowe, which questions were directly relevant to Rowe's credibility, and which were proper on cross-examination.
{¶ 6} "[4.] The court erred in sustaining objections to certain questions asked by Plaintiff's counsel of inmate Garner, which questions were directly relevant to defendant's habitual negligence in September 1997 and before.
{¶ 7} "[5.] The court erred in finding that Murphy failed to prove by the preponderance of the evidence that he received inadequate medical treatment after the riot; but the error was only as to follow-up treatment, not the urgent care.
{¶ 8} "[6.] The court erred in failing to grant the enlargement of the record with the deposition of Plaintiff Joseph Murphy that was taken on 9/28/2000 by the Defendant as on cross-examination, because 1) both doctors, in part, relied on said deposition for their medical testimony, and 2) the court therein had an opportunity further to assess the veracity of Murphy, before reaching his `absolutely clear' conclusion of perjury with respect to Murphy's testimony regarding the kites."
{¶ 9} Appellant was a death row inmate at ManCI and was confined to the B-side of DR-4, which was the disciplinary segregation unit for death row prisoners. On July 11, 1997, appellant overheard certain death row inmates discussing a takeover of DR-4. On July 14, 1997, appellant informed Officer Traxler that he had overheard inmates discussing a takeover. Based upon appellant's information, two additional lieutenants were assigned to DR-4 during the first and second shifts. Those extra lieutenants were pulled out of DR-4 at the end of July 1997 because prison officials did not receive additional or new information concerning a takeover. On September 5, 1997, a riot occurred in DR-4 after inmate Keith Lamar overpowered a correctional officer in a recreation area and used the officer's keys to release inmate Tony Powell from another recreational cage. Together, inmates Lamar and Powell assaulted the officers on duty and obtained their keys, which they used to release other inmates. The riot itself was confined within DR-4. The inmates painted the windows with primer and placed sheets over shattered glass so that the view of DR-4 was blocked. Several inmates, including appellant, were assaulted. Eventually members of the Special Response Team ("SRT") were able to secure the area. Each inmate was handcuffed pursuant to security policies and escorted to a nearby triage area for medical assessment. Appellant received medical attention for his injuries, which included a fractured jaw.
{¶ 10} On March 18, 2002, appellant field a complaint in the Ohio Court of Claims alleging that ODRC was negligent in failing to remove him from DR-4 or otherwise protect him after he gave information concerning the riot, that the officers of the SRT used excessive force when they re-took control of DR-4 and added to appellant's injuries, and that appellant received inadequate medical attention for his injuries following the riot. The court concluded that appellant had not met his burden of proof and that ODRC was not negligent in failing to remove him from DR-4 or otherwise protecting him, that the officers of SRT did not use excessive force in securing DR-4, and that appellant did not demonstrate that he had received negligent medical treatment for his injuries following the riot.
{¶ 11} In this appeal, appellant assigns six assignments of error; however, the main thrust of his appeal is that the Court of Claims rendered a decision which was against the manifest weight of the evidence. In his first, second and fifth assignments of error, appellant challenges numerous findings of fact made by the trial court. The remaining assignments of error concern the trial court having sustained objections to questions asked of Priscilla Rowe and inmate Garner as well as the trial court's decision refusing to allow appellant to file his deposition taken on September 28, 2000, following the trial. For the reasons that follow, this court overrules appellant's assignments of error and affirms the judgment of the Ohio Court of Claims.
{¶ 12} In order to have succeeded in his negligence action against the state, appellant had to prove by a preponderance of the evidence that ODRC owed him a duty, that it breached that duty, and that the breach proximately caused appellant's injuries. Strother v. Hutchinson (1981),67 Ohio St.2d 282. In the context of the custodial relationship between the state and its prisoners, the state owes a common-law duty of reasonable care and protection from unreasonable risks. See McCoy v. Engle (1987), 42 Ohio App.3d 204 and Woods v. Ohio Dept. of Rehab. 
Corr. (1998), 130 Ohio App.3d 742. This court noted further in Woods, as follows:
{¶ 13} "A determination of what degree of care [the state] owed to [appellant] must center on the foreseeability of [appellant's] injuries. Jeffers v. Olexo (1989), 43 Ohio St.3d 140. The extent of the duty will also vary with the circumstances. Clemets v. Heston (1985),20 Ohio App.3d 132. However, the state is not an insurer of inmate safety and owes the duty of ordinary care only to inmates who are foreseeably at risk. McAfee v. Overberg (1977), 51 Ohio Misc. 86. Reasonable or ordinary care is that degree of caution and foresight that an ordinarily prudent person would employ in similar circumstances. Smith v. United Properties, Inc. (1965), 2 Ohio St.2d 310. Furthermore, the special relationship evident between jailer and inmate does not expand or heighten the duty of ordinary reasonable care. Scebbi v. Ohio Dept. of Rehab Corr. (Mar. 21, 1989), Ct. of Claims. No. 87-09439, unreported."
{¶ 14} Judgments supported by some competent, credible evidence go into all of the essential elements of the case and will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279. Questions of fact are best left to the trier of fact. Complete Gen. Constr. Co. v. Ohio Dept. of Transp. (2002),94 Ohio St.3d 54. It has long been held that factfinder's are generally charged with drawing reasonable inferences from established facts, and that they view the witnesses and observe their demeanor, gestures and voice inflections, and use these observances in weighing the credibility of the proffered testimony. Mid-America Tire, Inc. v. PTZ Trading Ltd., (2002), 95 Ohio St.3d 367, citing Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77. If the evidence is susceptible to more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment most favorable to sustain the verdict and judgment. Seasons Co., supra.
{¶ 15} When applying this standard to the present case, it is clear that the trial court's verdict was not against the manifest weight of the evidence.
{¶ 16} In his first, second and fifth assignments of error, appellant challenges the following findings of fact made by the trial court and argues that those findings are against the manifest weight of the evidence: fourth, eighth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, twenty-seventh, and twenty-eighth. This court will begin with appellant's challenge to the thirteenth finding of fact, as it was here that the trial court determined that appellant gave perjured testimony. Appellant has continued to maintain that he informed officials at ODRC that a riot was imminent and that appellant made numerous requests to be removed from DR-4 prior to the riot because appellant feared for his life. The trial court did determine that appellant had notified prison officials of a possible riot on July 14, 1997. At that time, ManCI assigned two additional lieutenants to DR-4. Those lieutenants were removed at the end of July 1997 because no new or additional information of a riot was received.
{¶ 17} Between August 1997 and September 5, 1997, appellant submitted several kites (inmate communications) to various prison officials. Once a kite is submitted, a copy is made of the kite which is kept in the inmate's file. The kite is then returned to the inmate along with a response. In finding of fact thirteen, the trial court concluded that appellant had altered the kites that he had received back from the officials to whom he had sent them to include language concerning a riot and concerning his fear for his safety. By comparing the copies of the kites which were kept by the officials with the copies of the kites submitted by appellant, the trial court concluded that appellant had altered those exhibits. Upon review of those documents, this court finds that finding of fact number thirteen is supported by the record and is not against the manifest weight of the evidence. The trial court's determination that appellant had altered these kites influenced several of the other findings of fact made by the trial court and forms the basis of appellant's challenges to the trial court's decision.
{¶ 18} With regard to finding of fact number four, the trial court found that appellant had stated his displeasure with the Rules Infraction Board ("RIB") convictions he had received. Appellant challenges this finding as being against the manifest weight of the evidence and submits the copies of the kites, which he submitted into evidence. Inasmuch as this court finds that the trial court's determination that those kites had been altered was supported by the record and is not against the manifest weight of the evidence, the trial court's decision with regard to finding of fact number four is not against the manifest weight of the evidence.
{¶ 19} In finding of fact number eight, the trial court concluded that when appellant informed Officer Traxler that he had overheard conversations regarding a takeover in July 1997, appellant had not asked to be removed from DR-4. A review of the kites, which were in the possession of the various officials at ManCI, reveals that appellant was indeed seeking review of his RIB convictions. It is only in appellant's kites, which the court determined were altered, and in his testimony that appellant presents any evidence that he actually asked to be removed from DR-4. Based upon the kites themselves, which were in the possession of prison officials, the trial court made its conclusion and this court cannot say that finding is against the manifest weight of the evidence.
{¶ 20} The eleventh finding of fact involves the reasons why the additional lieutenants which had been assigned to DR-4 were removed. The trial court concluded that they were removed because there was no reason to believe there was going to be a riot. Appellant contends that they were removed because they deemed him to be a "troublemaker." Richard Hall, Deputy Warden of Operations, testified that the lieutenants were removed because no further information concerning a possible riot or takeover was received. This finding is supported by the evidence, and is not against the manifest weight of the evidence.
{¶ 21} In the twelfth finding of fact, the trial court concluded that between the end of July 1997 through September 5, 1997, prison officials at ManCI did not receive any additional or new information from appellant that a riot was being planned. Appellant again points to his kites, which the trial court concluded had been altered after they had been returned to him from prison officials. Further, Inspector Priscilla Rowe, to whom appellant addressed several of his kites, and Mr. Hall both denied receiving any additional information from appellant or anyone else after July 1997 when appellant first informed prison officials that he had heard rumors of a riot. Obviously the trial court found their testimony to be credible and this finding is not against the manifest weight of the evidence.
{¶ 22} In the fourteenth finding of fact, the trial court concluded that Investigator Joseph Masi did not receive any information from Shirley Pope, the principle research assistant for the correctional institution's inspection committee, prior to the riot. Appellant directs the court's attention to his Exhibit 13 as evidence that Ms. Pope told appellant that she had conveyed to Mr. Masi the information from appellant concerning the riot. However, upon review of that exhibit, this court specifically notes the letter addresses appellant's ongoing RIB conviction for assaulting a prison officer. Nothing in that letter discusses a riot. As such, this finding is likewise not against the manifest weight of the evidence.
{¶ 23} In the fifteenth finding of fact, the trial court concluded that prison officials at ManCI were not aware that inmates Lamar and Powell planned to takeover DR-4 or that appellant was in any personal danger. As stated previously, the trial court specifically found that the kites which appellant admitted into evidence had been altered and there was evidence from other sources that appellant had not conveyed additional information to prison staff after July 1997. This finding is not against the manifest weight of the evidence.
{¶ 24} The sixteenth finding of fact concerns Inspector Rowe's September 3, 1997 discussion with appellant. Ms. Rowe testified that appellant appeared relaxed, pleasant, calm and not in fear for his life. Ms. Rowe specifically testified that the topic of their conversation involved appellant's RIB conviction for assaulting an officer and that appellant never mentioned there was going to be a takeover or a riot nor did he indicate that he was concerned about his safety. This finding was not against the manifest weight of the evidence.
{¶ 25} In the twenty-seventh finding of fact, the trial court concluded that prison officials acted reasonably after appellant informed them of a conversation concerning a possible takeover in July 1997, and that the prison was not required to maintain extra security in DR-4 indefinitely. Again, appellant maintains that he continued to inform prison officials that a riot was impending after July 1997. However, as stated previously, the trial court concluded that appellant's kites had been altered, that his testimony was not credible, and that the testimony of the prison officials with whom he had spoken and addressed correspondence was more credible. As such, this finding of fact is not against the manifest weight of the evidence.
{¶ 26} In the twenty-eighth finding of fact, the trial court concluded that appellant had not proven that prison officials had actual or constructive notice of an impending assault upon him. Appellant again contends that prison officials had actual notice of the impending assault; however, as stated previously, the trial court found that appellant's testimony was not credible and that he had altered the kites, which he alleged he had sent to prison officials. Prison officials did increase security after appellant notified them that he had overheard conversations concerning a possible riot. When no riot occurred and when prison officials did not receive any additional information concerning a riot, those extra lieutenants were pulled out of DR-4. It was seven weeks later that this riot occurred and appellant was injured.
{¶ 27} The state is not liable for an intentional attack on an inmate by another inmate unless there is adequate notice of an impending assault. See Williams v. Southern Correctional Facility (1990),67 Ohio App.3d 517. The trial court found that appellant failed to prove by a preponderance of the evidence that prison officials had adequate notice of the impending assault on him. As stated previously, prison officials testified that appellant did not request protective custody but that he continued to object to the RIB finding that he had assaulted a prison officer. A review of the kites, which were in the custody of prison officials, reflects only appellant's request to be removed from DR-4 because he felt that he had been wrongfully convicted of assaulting an officer when he felt that he had been the one who was assaulted. The trial court's finding was not against the manifest weight of the evidence.
{¶ 28} Appellant also contends that the trial court's ninth conclusion of law is against the manifest weight of the evidence. The trial court concluded that appellant failed to prove by a preponderance of the evidence that he had received inadequate medical treatment after the riot. Appellant's jaw was broken when he was assaulted during the riot. Dr. Durrell Trago testified on appellant's behalf. According to Dr. Trago's testimony, appellant's surgery was within the standards of reasonable medical care. Dr. Trago did testify that the braces, which were placed on appellant's lower jaw, should have been removed sooner than they had been. However, Dr. Trago also testified that the delay in removing the braces did not harm appellant. Dr. Trago also testified that appellant's ribs had healed satisfactorily.
{¶ 29} Dr. Michael Hauser testified as an expert in oral and maxillofacial surgery. Dr. Hauser agreed with Dr. Trago that appellant's surgery was appropriate and within the standards of reasonable medical care. Dr. Hauser testified that appellant has had no detrimental affect by having the braces in his mouth longer than clinically required.
{¶ 30} Appellant had claimed that he had lost weight as a result of the braces remaining in his mouth. However, two days following the riot appellant weighed 147 pounds. On February 19, 1998, appellant weighted 165 pounds.
{¶ 31} Based upon the evidence, the trial court did not err in concluding that appellant had failed to prove by a preponderance of the evidence that he had received inadequate medical treatment after the riot.
{¶ 32} Based on the foregoing, appellant's first, second, and fifth assignments of error are not well-taken and are overruled.
{¶ 33} In his third assignment of error, appellant contends the trial court erred in sustaining objections to certain questions his counsel asked of Priscilla Rowe as those questions were directly relevant to Rowe's credibility.
{¶ 34} At trial and in his brief before this court, appellant continues to maintain and argue that the kites he submitted as evidence had not been altered. Based upon those kites, appellant contends that prison officials had more than adequate knowledge of an impending riot and knew that appellant feared for his life. In challenging Inspector Rowe and her testimony, appellant contends that someone else whited out the language addressing the possibility of a riot and his fear for his life from the kites that Ms. Rowe received.
{¶ 35} The first question asked of Ms. Rowe inferred that Ms. Rowe did indeed know that a riot was being planned because she had been told so by Officer Traxler. An objection was raised to this question on the basis that the question called for hearsay and the trial court agreed. Appellant was instructed to call Officer Traxler on cross-examination to find out whether or not she had told Ms. Rowe about the riot. Clearly the question did call for hearsay and the trial court correctly sustained the objection.
{¶ 36} Appellant's counsel then attempted to pose a hypothetical question to Ms. Rowe concerning why appellant would have told everyone else in the prison that he was in danger and not tell her when she was the only person who could have helped him. Contrary to appellant's assertions, even if the question was directed to Ms. Rowe's credibility, it called for the witness to speculate. This court finds that the trial court did not abuse its discretion by limiting appellant's questions in these regards. As such, appellant's third assignment of error is not well-taken and is overruled.
{¶ 37} In his fourth assignment of error, appellant contends that the trial court erred in sustaining objections to questions asked of inmate Garner. Counsel for appellant questioned inmate Garner concerning how he was escorted from one cell to another. Appellant was attempting to show that the policy utilized by the officers when moving inmates was improper. The trial court sustained the objections to the questions, as those questions were not directed to issues involved in appellant's case. It appears that appellant was attempting to show that ODRC and officials at ManCI were negligent in many areas concerning occurrences at the prison. Based upon this general negligence, it appears that appellant was attempting to show that prison officials were specifically negligent when it came to how they handled security before the riot and how they regained control of the prison after the riot. However, the trial court concluded that inmate Garner could only testify about those matters which had an impact on occurrences before the riot, during the riot, and specifically what he knew about matters involving appellant. Upon review, this court finds the trial court did not abuse its discretion by limiting inmate Garner's testimony to those subjects that were directly relevant to appellant's lawsuit. As such, appellant's fourth assignment of error is not well-taken and is overruled.
{¶ 38} In his sixth and final assignment of error, appellant contends that the trial court erred in failing to allow him to include as evidence his deposition which had been taken on September 28, 2000. For the reasons that follow, this court finds the trial court did not abuse its discretion.
{¶ 39} The trial in the present case was held on January 23 and 24, 2001. It was not until February 14, 2001 that appellant moved to enlarge the record to include his deposition testimony. Appellant's stated reasons for the request were that Dr. Hauser's deposition of January 9, 2001 was based, in part, upon his review of appellant's deposition.
{¶ 40} Civ.R. 32(A) provides that every deposition intended to be presented as evidence must be filed at least one day before the day of trial or hearing, unless for good cause the court permits a later filing. Upon review of appellant's motion to enlarge the record, appellant offered no explanation providing good cause and the trial court did not abuse its discretion in refusing to allow him to file his deposition testimony following the trial. As such, this assignment of error is likewise not well-taken and is overruled.
{¶ 41} Based on the foregoing, appellant's six assignments of error are overruled, and the judgment of the Ohio Court of Claims is hereby affirmed.
Judgment affirmed.
BOWMAN and BRYANT, JJ., concur.
GLASSER, J., retired of the Sixth Appellate District, assigned by active duty under authority of Section 6(C), Article IV, Ohio Constitution.