[Cite as *Mercado v. Dept. of Rehab. & Corr.*, 2009-Ohio-6073.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

ARIEL MERCADO

    Plaintiff

    v.

DEPARTMENT OF REHABILITATION AND CORRECTION

    Defendant
    Case No. 2007-06381

Judge Joseph T. Clark
Magistrate Steven A. Larson

MAGISTRATE DECISION

{¶ 1} Plaintiff brought this action alleging negligence. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} At all times relevant, plaintiff was an inmate in the custody and control of defendant at the Marion Correctional Institution (MCI), pursuant to R.C. 5120.16. On the morning of June 5, 2006, plaintiff fell and suffered injuries while attempting to climb the stairs in the MCI medical building. Plaintiff asserts that defendant negligently ordered him to climb the stairs despite his well-known medical issues that made it difficult for him to do so.

{¶ 3} In order for plaintiff to prevail upon his claim of negligence, he must prove by a preponderance of the evidence that defendant owed him a duty, that it breached that duty, and that the breach proximately caused his injuries. *Armstrong v. Best Buy Company, Inc.*, 99 Ohio St.3d 79, 81, 2003-Ohio-2573, citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77. Additionally, Ohio law imposes a duty of reasonable care upon the state to provide for its prisoners' health, care, and well-being.

*Clemets v. Heston* (1985), 20 Ohio App.3d 132, 136. Reasonable or ordinary care is that degree of caution and foresight which an ordinarily prudent person would employ in similar circumstances. *Smith v. United Properties Inc.* (1965), 2 Ohio St.2d 310. However, the state is not an insurer of inmates' safety. See *Williams v. Ohio Dept. of Rehab. and Corr.* (1991), 61 Ohio Misc.2d 699, at 702.

{¶ 4} Plaintiff testified that during the night before the incident, he received a mandatory "inside pass" to report to "P2," the second floor of the medical building, at 6:15 a.m. the next day. (Plaintiff's Exhibit 2.) Plaintiff stated that when he arrived at the medical building he noticed that the elevator was out of service. According to plaintiff, he then began to climb the stairs from "P1," the first floor, to P2 using a crutch that he had been issued. Plaintiff testified that the stairs consisted of two flights with a landing separating the flights, and that he climbed the first flight without incident. Plaintiff stated that he "almost made it all the way up" the second flight before his crutch slipped, causing him to lose his balance, fall down the stairs, and come to rest on the landing. According to plaintiff, he briefly lost consciousness and awoke to see a female staff member standing over him.

{¶ 5} Plaintiff testified that he had previously had difficulty climbing the stairs and that he recalled that on one occasion he became dizzy while climbing and had to sit and rest. Plaintiff further testified that he knew he should not have attempted to climb the stairs but was fearful that he would be disciplined for failing to respond to a mandatory pass. Plaintiff stated that on previous occasions when the elevator was not operational, MCI medical staff had come down from P2 to P1 so that he would not have to climb the stairs. However, plaintiff also stated that he did not see any corrections officer (CO) or other staff that he could ask for help in the P1 area prior to his attempt to climb the stairs and that he did not wait or look for anyone for fear of being late for his appointment.

{¶ 6} Corrections Major Randy Fox was the Chief of Security for MCI at the time of the incident. Major Fox testified that a "mandatory" pass such as the one issued to plaintiff is akin to a direct order and that failing to respond to the pass could result in disciplinary action. However, Fox stated that an inmate with plaintiff's condition would likely not be disciplined. Fox further testified that no fewer than two COs were scheduled to be on duty on the first floor of the medical building at the time plaintiff fell and that they could have assisted him.

{¶ 7} Polly Schmaly was employed as a registered nurse at MCI at the time of the incident. Schmaly testified that she was familiar with plaintiff and his health problems and that she had told him on at least one occasion prior to this incident that he was not to use the stairs. Schmaly further testified that she was called to the scene on the day of the incident and that she had helped plaintiff into a wheelchair and then took him into the infirmary for treatment. Schmaly examined plaintiff and prepared a report wherein she noted that plaintiff was bleeding from his upper jaw and that three of his front teeth were loose. (Defendant's Exhibit C.)

{¶ 8} Julie Daily was also employed as a registered nurse at MCI at the time of the incident. Daily testified that she could remember plaintiff having trouble climbing the stairs on prior occasions and that she gave him a direct order not to use the stairs. Daily specifically recounted that on May 17, 2006, she had responded to the P2 stairwell to find plaintiff out of breath and struggling to climb the stairs. (Defendant's Exhibit D.)

{¶ 9} Eduardo Castaneda was the MCI Healthcare Administrator at the time of the incident. Castaneda testified that plaintiff's medical records show that plaintiff had medical appointments rescheduled on April 14, and May 26, 2006, because the elevator in the medical building was broken and plaintiff was unable to climb the stairs. Castaneda further testified that there were five or six nurses on duty in the medical building at the time of the incident who could have assisted plaintiff.

{¶ 10} The court finds that Schmaly and Daily testified credibly that plaintiff was given several direct orders not to climb the stairs in the MCI medical building. The court further finds that on the morning of June 5, 2006, plaintiff chose to ignore those orders, attempted to climb the stairs without seeking assistance, and fell. Based upon Major Fox's testimony, the court finds that plaintiff's claim that he again feared being disciplined for failing to report to P2 as ordered was not credible, especially in light of previous accommodations that MCI staff had provided plaintiff. Accordingly, the court finds that plaintiff failed to take reasonable care to ensure his own safety and that such failure was the sole cause of his injuries. Therefore, judgment is recommended in favor of defendant.

*A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
STEVEN A. LARSON
Magistrate

cc:

Daniel R. Forsythe
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Lester S. Potash
1717 Illuminating Building
55 Public Square
Cleveland, Ohio 44113-1901

Magistrate Steven A. Larson

MR/cmd
Filed October 27, 2009
To S.C. reporter November 17, 2009